Thomas A. SCHWEICH, Missouri State Auditor, Appellant/Cross–Respondent,

v.

Jeremiah W. NIXON, Governor of the State of Missouri, Respondent/Cross–Appellant.

No. SC 92750.

Supreme Court of Missouri, En Banc.

Oct. 1, 2013.

Darrell L. Moore, State Auditor's Office, Jefferson City, for Appellant/Cross–Respondent.

James R. Layton, Solicitor General, Jefferson City, for Respondent/Cross–Appellant.

PER CURIAM.

The Missouri State Auditor filed a declaratory judgment action challenging an announcement issued by the Governor of the State of Missouri allegedly withholding certain monies from the 2012 fiscal year ("FY 2012") state budget for the Missouri legislature, the Supreme Court of Missouri, and the office of the Auditor. The trial court found that the Governor has complete discretion to control the rate of expenditures and to withhold or reduce expenditures at any time provided that actual revenues are less than the estimated revenues—in practical terms, at any

time until the final day of the fiscal year. It found for the Auditor on the latter's claim that the Governor is not authorized to increase appropriations based on an "estimated" or "E" designation on the line item.[1]

The Missouri Constitution specifically limits the Auditor's authority to that set out in the Constitution. The Constitution does not give the Auditor the authority to conduct a preaudit of other state officials' spending, which is in effect what the Auditor attempted to do by challenging the Governor's general authority to withhold funds prior to the end of the fiscal year in which those withholds were to occur. Accordingly, the Auditor did not have standing to bring this claim. For the same reason, the Auditor, who was acting solely in his official capacity, did not have standing to challenge the "E" appropriations.

The Auditor does have standing to seek a declaratory judgment as to the authority of the Governor to withhold portions of the appropriation for the Auditor's own office. But the challenge here was premature because it was brought prior to the end of FY 2012, the fiscal year as to which the Auditor claims funding improperly was withheld from his office. Until the end of that year it could not be determined whether the Governor merely was controlling the rate of appropriations or was withholding a portion of the Auditor's appropriation entirely nor could it be determined whether the constitutional requirements for permitting a permanent

withhold were met. Accordingly, the issue of the Governor's authority to withhold a portion of the Auditor's budget was not ripe for adjudication.

For this reason, pursuant to Rule 84.14,[2] this Court issues the judgment that the trial court should have entered and dismisses the petition without prejudice.

## I. BACKGROUND AND PROCEDURAL HISTORY

On June 10, 2011, the Governor announced that pursuant to his authority under article IV, section 27 of the Missouri Constitution he was going to withhold, in FY 2012, more than $600,000 from the legislature's FY 2012 budget, $300,000 from the Auditor's FY 2012 office budget, and $6 million from the Missouri judiciary's FY 2012 budget ("the withholds").[3]

The Auditor began an audit of the Governor's office on June 27, 2011, prior to the start of FY 2012. On August 26, 2011, the Auditor filed a petition for declaratory judgment and injunctive relief challenging the Governor's authority under article IV, section 27 to withhold these amounts. That section states:

Power of governor to control rate of and reduce expenditures.

Section 27. The governor may control the rate at which any appropriation is expended during the period of the appropriation by allotment or other means, and may reduce the expenditures of the state or any of its agencies below their appropriations whenever the actual rev-

1. "E" appropriations are appropriations by which the legislature does not approve spending at a particular appropriated amount but, instead, in areas where the exact dollar figure that will be needed cannot be specified, approves the spending of funds in excess of an estimated or "E" amount for the stated purpose.

2. "The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the court, in whole or in part, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." *Rule 84.14*.

3. The 2012 fiscal year began July 1, 2011, and ended June 30, 2012.

enues are less than the revenue estimates upon which the appropriations were based.

*Mo. Const. art. IV, sec. 27.*

The Auditor's petition asserted, *inter alia,* that (1) the Governor's FY 2012 withholds and reallocations are unconstitutional because they are arbitrary and capricious in regard to which budget allocations are reduced and which are not reduced and (2) the Governor's FY 2012 withholds are unconstitutional under article IV, section 27 of the Missouri Constitution because they were announced before FY 2012 began. He also argues that "E" appropriations in the budget are unconstitutional because article IV, section 23 requires specific appropriations by the legislature and that the separation of powers is violated if the Governor is permitted to authorize an expenditure in excess of the stated amount for the "E" or estimated amount set by the legislature.

In support, the Auditor recognizes the authority that section 27 gives to the Governor to reduce expenditures below appropriations but argues that this authority necessarily comes into effect only when and if actual revenues are less than revenue estimates for the fiscal year in question. As the withholds were announced prior to the beginning of FY 2012, the Auditor argues, the Governor could not then have known whether actual revenues would be less than revenue estimates and, therefore, did not have authority to reduce appropriations to any of these entities. The Governor responds that the withholds were not permanent or irreversible, that they were undertaken in furtherance of his constitutional duty to ensure a balanced budget, as were the "E" appropriations, and that his actions were not arbitrary and capricious but rather were a direct application of his constitutional authority under article IV, section 27.

The trial court granted in part and denied in part the Auditor and the Governor's cross-motions for summary judgment. The Auditor and the Governor both appeal from the trial court's judgment. This Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution because this case involves the validity of portions of appropriations bills enacted by the General Assembly and approved by the Governor. *See Shipley v. Cates,* 200 S.W.3d 529, 534 (Mo. banc 2006); *State v. Planned Parenthood of Kan. and Mid–Mo.,* 37 S.W.3d 222 (Mo. banc 2001).

## II. STANDARD OF REVIEW

■■■■ "Because standing is a question of law, review of the issue on appeal is de novo." *CACH, LLC v. Askew,* 358 S.W.3d 58, 61 (Mo. banc 2012). Resolution of this case also involves interpretation of article IV, sections 13 and 27 of the Missouri Constitution. Constitutional interpretation is a question of law and is reviewed de novo. *Akers v. City of Oak Grove,* 246 S.W.3d 916, 919 (Mo. banc 2008).

## III. LACK OF STANDING TO CHALLENGE GOVERNOR'S ACTIONS

■■■■ Prior to addressing the Auditor's claim that the Governor acted beyond his constitutional authority in withholding appropriations to offices other than his own and in his handling of "E" appropriations, this Court must determine whether these issues present a justiciable controversy. Justiciability is a "prudential" rather than a jurisdictional doctrine. "A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Mo. Health Care Ass'n v. Attorney Gen. of Mo.,* 953 S.W.2d

617, 620 (Mo. banc 1997), *citing State ex rel. Chilcutt v. Thatch*, 359 Mo. 122, 221 S.W.2d 172, 176 (1949).

The first two elements of justiciability are encompassed jointly by the concept of "standing." "Prudential principles of justiciability, to which this Court has long adhered, require that a party have standing to bring an action. Standing requires that a party have a personal stake arising from a threatened or actual injury." *State ex rel Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986). *Accord, Harrison v. Monroe Cnty.*, 716 S.W.2d 263, 265–66 (Mo. banc 1986) (standing is "a component of the general requirement of justiciability" and is the state analogue to the federal "case or controversy" requirement).

[A] primary objective of the standing doctrine is to assure that there is a sufficient controversy between the parties that the case will be adequately presented to the court. That, plus the purpose of preventing parties from creating controversies in matters in which they are not involved and which do not directly affect them are the principal reasons for the rule which requires standing. *Ryder v. St. Charles Cnty.*, 552 S.W.2d 705, 707 (Mo. banc 1977).

Standing is a necessary component of a justiciable case that must be shown to be present prior to adjudication on the merits.[4] *CACH, LLC*, 358 S.W.3d at 61; *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002).[5]

Even when a plaintiff is able to show standing, the merits will not be reached unless the case is ripe. Ripeness is determined by whether "the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Mo. Health Care Ass'n*, 953 S.W.2d at 621. "A court cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 26 (Mo. banc 2003), *quoting Mo. Health Care Ass'n, Id.* at 621.

Most courts tend to address standing first and reach the ripeness issue only if standing requirements are satisfied.[6] This makes sense, for "[p]arties seeking relief 'bear the burden of establishing that they have standing.'" *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 622 (Mo. banc 2011),

4. *See e.g., Mo. Alliance for Retired Americans v. Dep't of Labor & Ind. Relations*, 277 S.W.3d 670, 676–77 *(Mo. banc 2009) (plurality opinion)*; *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 132 (Mo. banc 2000); *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986).

5. Although sometimes referred to in terms of jurisdiction, as the above discussion demonstrates, the concept of standing is better understood as a matter of justiciability, that is, of a court's authority to address a particular issue when the party suing has no justiciable interest in the subject matter of the action. For this reason, Missouri courts before and after the decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009),

have held that standing is a prerequisite to the court's authority to address substantive issues and so must be addressed before all other issues. *See, e.g., CACH*, 358 S.W.3d at 61 (reaffirming that "[c]ourts have a duty to determine if a party has standing prior to addressing the substantive issues of the case.").

6. *See e.g., Mo. Health Care Ass'n*, 953 S.W.2d at 620–21 (addressing standing first); *Planned Parenthood of Kan. v. Nixon*, 220 S.W.3d 732, 737–40 (Mo. banc 2007) (addressing standing first). Compare *Mercy Hosps. East Cmtys. v. Mo. Health Facilities Review Comm.*, 362 S.W.3d 415, 417–18 (Mo. banc 2012) (addressing ripeness before standing).

*quoting Manzara v. State,* 343 S.W.3d 656, 659 (Mo. banc 2011). If a particular party is unable to show that it has standing to bring the action at all, there is no point in reaching the hypothetical issue whether the action would be timely if it could have been brought.

The facts of the instant case uniquely implicate both standing and ripeness issues, as the Governor contests the Auditor's standing to sue and alleges that even if the Auditor has standing, because suit was brought before FY 2012 was closed, his claim was not ripe. Accordingly, before addressing the merits of a claim the Court must determine whether the Auditor has standing to bring this constitutional challenge.

 When considering standing, there is "no litmus test for determining whether a legally protectable interest exists." *Mo. Alliance for Retired Americans,* 277 S.W.3d at 676. The issue is whether plaintiff has "a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 25 (Mo. banc 2003). A party establishes standing, therefore, by showing that it has "some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Mo. State Med. Ass'n v. State,* 256 S.W.3d 85, 87 (Mo. banc 2008), *citing Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002).

In this case, the Governor challenged the authority of the Auditor to bring this suit in his official capacity. The Auditor responded that he had a legal interest as Auditor in challenging the Governor's authority to announce, prior to the beginning of the fiscal year, budgetary withholds or the setting of specific amounts in excess of those specified in "E" appropriations. The initial issue before this Court is whether this is adequate to give the Auditor standing to challenge the Governor's authority. The answer to this question depends on whether such a challenge falls within the Auditor's constitutional authority.

 As the Auditor correctly notes, a state officer has "the capacity to bring suit to enforce [his] powers and duties under the Missouri Constitution." *Kelly v. Hanson,* 931 S.W.2d 816, 818 (Mo.App.1996). This Court agrees that if the Auditor's challenge to the Governor's action is within his constitutionally defined duties, the Auditor also has met his burden of demonstrating he has standing to raise this issue. To determine standing, the Court turns to article IV, section 13, which sets out the duties and authority of the Auditor as follows:

State auditor—qualifications and duties—limitations on duties

Section 13. The state auditor shall have the same qualifications as the governor. He shall establish appropriate systems of accounting for all public officials of the state, post-audit the accounts of all state agencies and audit the treasury at least once annually. He shall make all other audits and investigations required by law, and shall make an annual report to the governor and general assembly. He shall establish appropriate systems of accounting for the political subdivisions of the state, supervise their budgeting systems, and audit their accounts as provided by law.

Section 13 also specifically limits the authority of the Auditor by prohibiting his exercise of duties unrelated to those involving supervising and auditing of the receipt and expenditure of public funds, stating:

No duty shall be imposed on him by law which is not related to the supervising

and auditing of the receipt and expenditure of public funds.

*Mo. Const. art. IV, sec. 13.*

This Court previously has recognized that state offices are ones of specifically delegated powers, with no implied powers. *Kinder,* 89 S.W.3d at 453–54; *Petition of Bd. of Pub. Buildings,* 363 S.W.2d 598, 608 (Mo. banc 1962). In interpreting the identically constructed limiting language of article IV, section 15, outlining the limited duties of the state treasurer, the Court found "[t]he constitution enumerates very specific powers that the treasurer may exercise and, then, specifically provides that *no* duty not related to those specifically enumerated powers may be exercised by [him or] her." *Kinder,* 89 S.W.3d at 453.

The wording of section 13 is simple and clear. It authorizes the Auditor to conduct postaudits of "the accounts of all state agencies" and to "establish appropriate systems of accounting" for public officials.[7] He has and may be given no greater authority than that set out in the constitution. Yet, in this declaratory judgment action, the Auditor stated that he had sought to review the Governor's basis for the FY 2012 withhold and for his handling of "E" appropriations, but that the Governor failed to provide him with the proper documentation. He thereby prospectively challenged the Governor's authority to withhold from a budget for a fiscal year that had not yet concluded.

■ Such a preaudit is not within the Auditor's constitutional authority. "Words used in constitutional provisions are interpreted to give effect to their plain, ordinary, and natural meaning." *Wright–Jones v. Nasheed,* 368 S.W.3d 157, 159 (Mo. banc 2012). A postaudit is "an audit made subsequent to the final settlement of a transaction." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1771 (1993).* As this Court stated in *Director of Revenue v. State Auditor,* conducting a postaudit "requires no more of the Auditor than that he [or she] verify the financial picture . . . by examination after the fact, as contrasted with the preaudit duties of the comptroller, . . . of the financial statements of the transactions in the department and present his [or her] opinion as to the fairness with which the financial statements present the financial position of the department." 511 S.W.2d 779, 783 (Mo.1974).

The Auditor claims that he is not conducting a preaudit but merely is seeking to enforce proper accounting standards as permitted by *Kelly v. Hanson,* 959 S.W.2d 107, 110 (Mo. banc 1997).[8] But through this action the Auditor is seeking to control, prior to its exercise, the Governor's authority to control the rate and amount of public expenditures, not to set up standards for how the Governor accounts for that spending. In essence, in June 2011 the Auditor began an audit of the Governor's FY 2012 expenditures before FY 2012 began. But expenditure records are not created before the expenditure is made. The records that are made may be

---

7. The Auditor does not claim that he was conducting an "investigation required by law" pursuant to article IV, section 13 so that section is not implicated by this decision. *Compare Brown v. Carnahan,* 370 S.W.3d 637, 671 (Mo. banc 2012) (discussing Auditor's issuance of fiscal notes as part of authority to conduct investigations required by law).

8. The Auditor's argument is that the constitution requires some documentation to be provided to support a decision to withhold particular funds, not that particular documents were withheld. This Court does not reach the issue raised as to the specificity with which the Governor must support withhold and expenditure decisions because, as noted, the Auditor has no standing to raise these issues through a preaudit as occurred here.

reviewed by the Auditor in a postaudit, which, by definition, occurs after expenditures have been made. *State Auditor*, 511 S.W.2d at 783. The Auditor is not conducting a postaudit or seeking to enforce proper accounting standards in a manner permitted by the constitution.

In sum, the Auditor has exceeded his constitutional authority in challenging the Governor's constitutional power to announce in advance a withhold or allocation of "E" appropriations of certain sums from the state budget because the Auditor is limited to conducting a postaudit, which is an examination of a financial record performed after the fact. *Mo. Const. art. IV, sec. 13*. The Auditor's constitutional authority is limited. He may "establish appropriate systems of accounting for all public officials of the state, post-audit the accounts of all state agencies." *Id*. But "[n]o duty shall be imposed on him by law which is not related to the supervising and auditing of the receipt and expenditure of public funds." *Id*. The Auditor does not have standing either to challenge the constitutional authority of the Governor's withholds and handling of "E" appropriations actions or to conduct a preaudit of the 2012 fiscal year, because these actions

exceed the Auditor's limited constitutional authority.[9]

## IV. WITHHOLDING OF PORTIONS OF AUDITOR'S OFFICE BUDGET

 The Auditor also challenges the Governor's authority to withhold $300,000 budgeted for his office. Paragraph 15 of the fact portion of the petition asserts that the Auditor "was directly affected by [the Governor's] actions in that [the Auditor] was subject to withholdings by [the Governor], as listed in Exhibit A."

Exhibit A is a document prepared by the Governor's office on June 10, 2011, entitled "FY 2012 Budget Expenditure Restriction/Line Item Vetoes," and setting out the Governor's intended expenditure restrictions, line item vetoes and withholds and the reasons for them. The document states that $300,000 is designated to be withheld from the Auditor's total appropriation of $6.7 million. The comment section states, "Insufficient revenue available to start a new program. Added to fund SB 323, which was not passed by the legislature."[10]

 Appropriations are not made by that document but through an appropriations bill. Here, that appropriations bill

---

9. The Missouri Constitution does not similarly set specific limits on the authority of the Attorney General to act on behalf of the State or its citizens. The "absence of a provision for [only] specific powers for the attorney general in our constitution vests the office" both with any powers granted by statute and "with all of the powers of the attorney general at common law." *Am. Tobacco Co.*, 34 S.W.3d at 136. The Attorney General acts "as an advocate for the State of Missouri and its citizens." *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 495 (Mo. banc 2003) (*Wolff, J., concurring*). *See also* § 27.060, RSMo 2000. ("The attorney general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or

necessary to protect the rights and interests of the state ...."). Here only the Auditor, not the Attorney General, sued to preclude the withholds and "E" appropriations at issue. As just discussed, the Auditor is not given the same power as is the Attorney General by the Missouri Constitution to sue on behalf of the State or its citizens.

10. The Auditor contends that the motivation for the withhold was simply political as his office budget was the only one cut, not that of executive branch offices held by members of the Governor's own party. As the appropriation is a general one, this Court need not resolve the parties' disagreement as to the motivation for the withhold.

was House Bill No. 12, section 12.145 of which sets out the appropriations for the Auditor's office. This Court may take judicial notice of a bill, just as it does of statutes or of the proceedings by which laws are enacted.[11] Section 12.145 of H.B. 12 does not designate that any portion of the appropriation must be spent on any particular program or is dependent on passage of a particular program or bill. Rather, it allocates funds to the State Auditor generally in various categories. The appropriation itself is a general one, not limited to use for any particular program.[12] Once appropriated, unless otherwise restricted by law, it is within the discretion of the office holder or agency to use the appropriation within the broad categories allowed by the bill.

This Court agrees that the Auditor has standing to contest the withholding of $300,000 from his own office budget. As noted earlier, standing requires a showing of a "legally protectable interest in the litigation" such that the plaintiff is "directly and adversely affected by its outcome."

*Mo. State Med. Ass'n,* 256 S.W.3d at 87. The refusal to pay the $300,000 to the Auditor, if not authorized by law, would meet this standard.

 But this is a declaratory judgment action. Even when a party has standing, this Court cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination. *Mo. Soybean Ass'n,* 102 S.W.3d at 26. Declaratory judgments are not available to "adjudicate hypothetical or speculative situations that may never come to pass." *Id.* at 25. As this Court previously noted in a case involving the right of the Governor to reduce state expenditures, "Under any argument, however, the question of the propriety of the Governor's order to reduce state expenditures is ripe for adjudication only where there is a factual showing that actual state revenues have fallen below revenue estimates and the Governor has reduced the expenditures below the amount appropriated." *State ex rel. Sikeston R–VI Sch. Dist. v.*

11. "It is unnecessary to either plead or make proof of a public statute, for the courts must take judicial notice of them." *Bowen v. Missouri Pacific Railway Co.,* 118 Mo. 541, 24 S.W. 436, 437 (1893). This applies both to enacted "laws of this state" and also to "the proceedings by which they were enacted." *Sperry Corp. v. State Tax Comm'n,* 695 S.W.2d 464, 469 (Mo. banc 1985) (internal citations omitted), and to bills as well as to codified statutes. Indeed, this Court has taken notice of a bill that failed to pass in the General

Assembly, *In re Gerling's Estate,* 303 S.W.2d 915, 920 (Mo.1957), the legislative journal entries associated with the passage of a bill, *State v. Adams,* 323 Mo. 729, 19 S.W.2d 671, 673 (1929), the last action taken on a bill by one chamber of the General Assembly, *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 168 (1956), and legislative records for the purpose of comparing a House bill to its Senate counterpart, *State ex rel. Karbe v. Bader,* 336 Mo. 259, 78 S.W.2d 835, 838 (1934).

12. Section 12.145 of H.B. 12 states in relevant part:

Section 12.145. To the State Auditor
Personal Service and/or Expense and Equipment
From General Revenue Fund . . . . . . . . . . . . . . . . . . . . . . . $6,658,762
From Federal Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 879,116
From Conservation Commission Fund . . . . . . . . . . . . . . . . . . . 45,651
From Parks Sales Tax Fund . . . . . . . . . . . . . . . . . . . . . . . . . . 21,496
From Soil and Water Sales Tax Fund . . . . . . . . . . . . . . . . . . . 20,728
From Petition Audit Revolving Trust Fund . . . . . . . . . . . . . . 844,350
Total (Total not to exceed 168.77 F.T.E.) . . . . . . . . . . . . . $8,470,103

*H.B. 12, 96th Gen. Assemb., 1st Reg. Sess. (Mo. 2011).*

*Ashcroft,* 828 S.W.2d 372, 375–76 (Mo. banc 1992).

Here, the requirements for ripeness were not met. The Auditor brought his petition because he challenged the Governor's authority to "reduce the expenditures of … state … agencies below their appropriations" and his authority to allocate specific sums to "E" appropriations before FY 2012 had ended. But article IV section 27 expressly allows the Governor to "control the rate at which any appropriation is expended during the period of the appropriation by allotment or other means." Until FY 2012 ended without payment of the $300,000 at issue, it could not be known whether the Governor merely was exercising his constitutional authority to control the rate of appropriation of these funds or whether they were being withheld or spent beyond their appropriation entirely.

Similarly, article IV, section 27 gives the Governor the authority to "reduce the expenditures of the state or any of its agencies below their appropriations whenever the actual revenues are less than the revenue estimates upon which the appropriations were based." So, if actual revenues were less than revenue estimates by the end of FY 2012, the Governor would be authorized to reduce expenditures below appropriations.

In sum, the trial court could rule only on the claims filed. The declaratory judgment was filed prior to the end of FY 2012 and sought a prospective declaration as to what appropriations the Governor could or could not withhold in FY 2012. Relief could not be granted on these claims as the Governor's authority is dependent on factors that could not be known and that could not be a part of the record until after the trial court issued its judgment, and as until the fiscal year ended it could not be known what withholds, if any, might be permanent. The Auditor's claims that sums could not be withheld from his office were not ripe and the claims did not present a justiciable controversy.[13]

## V. CONCLUSION

The Auditor does not have standing to bring the claims raised other than a claim relating to his own office appropriation. It was premature for the Auditor to bring a declaratory judgment action as to whether the $300,000 withheld from his office budget was to be a permanent withhold or simply was an aspect of the Governor's control of the timing of its allocation. While the lack of standing and ripeness does not implicate the merits of the Auditor's claims as to his own appropriation, it does preclude relief in this action. Accordingly, pursuant to Rule 84.14, this Court will issue the ruling that the trial court should have entered. The Auditor's claims are dismissed without prejudice. *See, e.g., Missouri Soybean Ass'n,* 102 S.W.3d at 29 (dismissing without prejudice where claims brought prematurely).

All concur.

---

**13.** Because of its resolution of the standing and ripeness issues, this Court need not reach the Governor's argument that the Auditor's Petition did not mention "E" appropriations or adequately set out a claim regarding them, nor need it address whether the Petition should have set out any claim as to the Auditor's own office appropriations in a separate count.