

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

MANNERING CONDOMINIUM        )
ASSOCIATION,                 )              No. ED101734
                             )
          Respondent,      )              Appeal from the Circuit Court
                             )              of the City of St. Louis
vs.                          )
                             )              Honorable Calea Stovall-Reid
 DAVID A. SCHULTE,          )
                             )
          Appellant.       )              FILED:  June 2, 2015


### Introduction

Appellant David Schulte ("Schulte") appeals from the judgment of the trial court, following a bench trial, ordering Schulte to pay Mannering Condominium Association ("the Association") $7,888.74 in delinquent assessments and attorneys' fees.  On appeal, Schulte argues the trial court erred in entering judgment in favor of the Association because the trial court lacked subject matter jurisdiction due to the plaintiffs' lack of standing.  Schulte contends that because a quorum was not present at the Association Board Meeting authorizing Efthim Company Realtors ("Efthim") and attorney Robert Jones ("counsel") to file the lawsuit against him, Efthim and counsel lacked authority to act on the Association's behalf, and correspondingly, lacked standing to bring the action.  Similar to his first point on appeal, Schulte additionally claims the trial court erred in entering judgment because the real party in interest,

the Association, was not a party in the case. Because a quorum was present at the Association Board Meeting as defined by the Association's By-laws, and because the record reflects that Efthim and counsel were authorized to act on behalf of the Association in filing the lawsuit against Schulte, we affirm the judgment of the trial court.

Factual and Procedural History

The Association is a Missouri nonprofit corporation governed by the Mannering Condominium Declaration of Condominium By-laws and Indenture ("Declaration"). Attached as Exhibit D to the Declaration are the By-laws of Mannering Condominium ("By-laws"). Under the Declaration, the Association serves as the "governing body for all of the Unit Owners for the maintenance, repair, restoration, reconstruction, replacement, administration, regulation and operation of the Property." The Association is comprised of six condominiums, each owned by a "Unit Owner." The Declaration defines a Unit Owner as "the person or persons whose estates or interests, individually or collectively, aggregate a fee simple ownership of a Unit." Each Unit Owner is a member of the Association, as well as a member of the Board of Managers ("the Board") which governs the Association. Each of the six units in the Association receives one vote on the Board.

The Board is empowered by the Declaration to provide for the maintenance, repair, and replacement of the common elements of the Association, and to levy and collect assessments from the Unit Owners to cover their respective shares of the Association's expenses. The Declaration also provides the Board with broad authority to retain the services of a Manager to manage the affairs and operation of the Association, to hire attorneys, and to pursue all remedies for unpaid assessments, including authorizing the Manager to do so on its behalf.

2

The Declaration requires each Unit Owner to pay his or her assessments. When a Unit Owner fails to pay the assessment, the unpaid amount constitutes a lien upon the unit, and the Association is authorized to pursue all remedies in correcting the default. Further, Article IV, Section 8 of the By-laws provides that any Unit Owner with unpaid assessments "shall relinquish all voting rights in the Association until the time all delinquent assessments (plus interest allowed by law) are paid."

As a prerequisite to Board action, a quorum must be present at a Board meeting. Article I, Section 5 of the By-laws provides that "[a] quorum of Unit Owners for any meeting shall be constituted by Unit Owners of 4 units represented in person or by proxy." Article I, Section 5 further specifies that "any action may be taken at any meeting of the voting members at which a quorum is present upon the affirmative vote of a majority of the voting members present at such meeting."

The Board levied certain assessments against Schulte, a Unit Owner, which Schulte failed to pay. A lien automatically attached to Schulte's unit and was recorded. On February 18, 2014, the Board held a meeting ("the Board Meeting") at which four Unit Owners were present either physically or electronically. One of the four Unit Owners present at the Board Meeting had unpaid assessments at the time of the meeting and therefore was ineligible to vote; the other three Unit Owners were current on their assessments and eligible to vote. The owner of Efthim, Frank Efthim ("Frank"),[1] was present at the Board Meeting. The minutes from the Board Meeting show that Frank briefed the Board on the status of several ongoing projects within the Association, including tuck pointing and roof repair for the units, maintenance of the heating system, and deck repairs. Frank also updated the Board on the status of Schulte's delinquent

_____

[1] Because Efthim Company Realtors is referred to as "Efthim," we refer to Frank Efthim by his first name throughout the opinion to avoid confusion. This Court intends no disrespect in doing so.

3

assessments, recommended filing suit against Schulte to collect the amount owed by Schulte to the Association, and recommended using counsel to file the lawsuit. The four Unit Owners present at the Board Meeting voted unanimously to have counsel file suit against Schulte for the unpaid assessments.

Efthim and counsel subsequently filed a lawsuit on behalf of the Association seeking a judgment against Schulte in the amount of the delinquent assessments. A bench trial was held on May 7, 2014, at which Frank testified as to Efthim's involvement with the Association and the lawsuit against Schulte. The trial court also took judicial notice of a 2005 consent judgment ("the 2005 Consent Judgment") that was binding upon the Association. The 2005 Consent Judgment appointed Efthim to serve as the Association's Manager for a term of five years, until June 9, 2010. The 2005 Consent Judgment directed that, at the expiration of the five-year term, "management of Mannering Condominium shall revert back to the individual owners and shall occur in accordance with the Indentures and By-laws of Mannering Condominium Association." The trial court entered judgment in favor of the Association, ordering Schulte to pay the Association $7,888.74 in delinquent assessments and attorneys' fees.

Schulte filed a motion for relief from judgment or a new trial alleging that, because Efthim's authority to act as the Association's Manager had expired in 2010, Efthim had no authority to bring suit against Schulte on the Association's behalf. The trial court denied the motion. This appeal follows.

## Points on Appeal

Schulte presents two points on appeal. In his first point on appeal, Schulte contends that because the Association did not authorize the lawsuit filed against Schulte, the trial court lacked subject matter jurisdiction over the action and erred in entering judgment in favor of the

4

Association instead of dismissing the action. Specifically, Schulte maintains that the lawsuit filed by Efthim and counsel against him was not authorized by the Association because (1) the meeting at which the lawsuit against Schulte was purportedly authorized lacked a quorum as required by the By-laws; and (2) Efthim and counsel lacked any other authority to act on the Association's behalf because Efthim's agency relationship with the Association expired before the lawsuit against Schulte was filed. In his second point on appeal, Schulte contends that the trial court erred in entering judgment in favor of the Association because the real party in interest, the Association, was not a party to the lawsuit that was filed by Efthim and counsel.

## Standard of Review

In a judge-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determinations of credibility and view the evidence and the inferences drawn therefrom in the light most favorable to the judgment. Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006). Questions of law, including standing, are reviewed *de novo*. Schweich v. Nixon, 408 S.W.3d 769, 773 (Mo. banc 2013).

## Discussion

As a threshold matter, we address Schulte's apparent misunderstanding of subject matter jurisdiction in light of J.C.W. ex rel. Webb v. Wyciskalla. In Webb, the Missouri Supreme Court clarified that subject matter jurisdiction is simply the court's authority to render a judgment in a particular category of case. J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249, 253 (Mo. banc 2009). In Missouri, subject matter jurisdiction is derived directly from Article V, Section 14 of the state constitution. "Article V, section 14 sets forth the subject matter jurisdiction of

5

Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal.'" Id. As a civil case, the trial court had subject matter jurisdiction over the lawsuit against Schulte.

Schulte's appeal is a challenge to the trial court's authority rather than its subject matter jurisdiction. The central tenet of Schulte's claim on appeal is that the Association, as a non-profit corporate entity, may act only through its Board. Schulte posits that Efthim and counsel were not authorized by the Board to file suit against Schulte on behalf of the Association, and that as a result, the true plaintiffs in the suit were Efthim and counsel, not the Association. Schulte reasons that Efthim and counsel therefore had no standing to bring the lawsuit against Schulte. The Missouri Supreme Court has clarified that standing is a matter of justiciability rather than jurisdiction, and that it must be addressed before all other issues:

> Although sometimes referred to in terms of jurisdiction… the concept of standing is better understood as a matter of justiciability, that is, of a court's authority to address a particular issue when the party suing has no justiciable interest in the subject matter of the action. For this reason, Missouri courts before and after the decision in J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249 (Mo. banc 2009), have held that standing is a prerequisite to the court's authority to address substantive issues and so must be addressed before all other issues.

Schweich, 408 S.W.3d at 774, n. 5. Accordingly, Schulte's appeal challenges not the jurisdiction of the trial court, but rather, the trial court's conclusion that the parties to the lawsuit had standing to bring the claim and that the trial court had authority to hear the case. Thus, the ultimate issue before us is whether there are sufficient facts to support the trial court's determination that the plaintiffs in the original lawsuit had standing. Because standing is a legal issue, our review of the trial court's standing determination is *de novo*. Id. at 773. However, we defer to the factual findings of the trial court and apply those facts to the law.

6

Schulte's two points on appeal are interrelated and are resolved by the same analysis. The core issue raised by each of Schulte's points is the contention that the Association never authorized the filing of the lawsuit against Schulte and thus was not a party to the lawsuit. For this reason, Schulte claims that the real plaintiffs in the lawsuit were the parties who filed the lawsuit, Efthim and counsel. Schulte reasons that in their individual capacities, neither Efthim nor counsel had legal standing to sue Schulte for unpaid Association assessments. Schulte bases his argument on two factual claims: first, that there was no quorum of members present at the Board meeting in which the lawsuit against Schulte was authorized, and second, that Efthim had no other authority to act on behalf of the Association at the time Efthim filed the lawsuit against Schulte. We will address each claim in turn. If our review of the record reveals that there was a quorum present at the Board Meeting and that Efthim had authority to file suit against Schulte on behalf of the Association, then the Association was the real plaintiff in the case and both of Schulte's points on appeal must fail.

## I.    The Quorum Issue

Article I, Section 5 of the By-laws states that "[a] quorum of Unit Owners for any meeting shall be constituted by Unit Owners of 4 units represented in person or by proxy." Schulte posits that the required quorum was not present at the Board Meeting because, although four Unit Owners were present, only three of the four were eligible to vote at the time of the Board Meeting. Schulte correctly notes that one of the Unit Owners present at the Board Meeting had outstanding unpaid assessments, and Article IV, Section 8 of the By-laws provides that any Unit Owner with unpaid assessments "shall relinquish all voting rights in the Association until the time all delinquent assessments (plus interest allowed by law) are paid." Schulte thus equates a Unit Owner's loss of voting rights at a Board meeting with ineligibility for

7

purposes of determining the presence of a quorum. Schulte reasons that nonvoting Unit Owners may not be counted in determining the presence of a quorum. While Schulte presents a logical line of reasoning, his position is nevertheless unavailing because it is inconsistent with the plain language of the Association's Declaration and By-laws.

We agree with Schulte that the By-laws rescind a Unit Owner's voting rights due to delinquent assessments. However, the loss of voting rights does not change a Unit Owner's status as a Unit Owner or member of the Association. Neither the Declaration nor the By-laws states that a Unit Owner loses the right to remain a member of the Association or his status as a Unit Owner due to delinquent assessments. The Declaration's definition of "Unit Owner" contains no reference to voting rights. A Unit Owner is simply defined as "the person or persons whose estates or interests, individually or collectively, aggregate a fee simple ownership of a Unit." Thus, an individual becomes a Unit Owner by virtue of owning one of the six condominium units within the Association. Each Unit Owner is also a member of the Association, with membership in the Association similarly conditioned solely upon continued unit ownership, with no reference to voting rights. Article XI of the Declaration states that "[e]ach Unit Owner shall be a member of the Association as long as he or she shall continue to be a Unit Owner." Further, Article I, Section 2 of the By-laws, which specifies the circumstances in which a Unit Owner's membership in the Association "shall terminate," is notably silent as to voting rights and unpaid assessments. Instead, Section 2 provides that the "membership of each Unit Owner shall terminate when he or she *ceases to be a Unit Owner*, and upon the sale, transfer or other disposition of his or her ownership interest in the property, his or her membership in the Association shall automatically be transferred to the new Unit Owner." (emphasis added).

8

The sections of both the Declaration and By-laws addressing the issue of unpaid assessments are consistent with the above-referenced scheme. Both Article X of the Declaration and Article IV, Section 8 of the By-laws specify that any Unit Owner who fails to pay assessments "shall relinquish all voting rights in the Association until the time all delinquent assessments (plus interest allowed by law) are paid." However, neither section states that an individual risks losing his status as a Unit Owner due to unpaid assessments; instead, the only penalty for delinquent assessments is the loss of voting rights and the possibility of a lien on the Unit Owner's property.

Schulte argues that a Unit Owner's voting eligibility is determinative of whether a quorum was present, and suggests that we be guided by Section 355.281.1,[2] which restricts a quorum to a percentage of "the votes entitled to be cast in a matter." Schulte further notes that longstanding principles of corporate law support his argument that non-voting members may not be counted in determining the presence of a quorum. This argument is unavailing because the definitions and procedures set forth in the Declaration and By-laws of the Association are controlling. As such, Schulte's reliance on Section 355.281.1, or other principles of corporate law, is misplaced. Notably, Section 355.281.1 articulates a default rule for what constitutes a "quorum." Indeed, Section 355.281.1 states "unless this chapter or the articles of by-laws provide for a higher or lower quorum…" Schulte's argument disregards a fundamental characteristic of default rules – that such rules provide a default standard for the parties *unless* by-laws have been adopted which provide otherwise. Here, the Association's By-laws do just that; the By-laws provide a different quorum requirement than the default quorum rule set forth in Section 355.281.1.

---

[2] All statutory references are to RSMo. 2000.

When interpreting the Declaration and By-laws, we are guided by the plain meaning of the words used therein; if the language used is not ambiguous, we must follow what the Declaration and By-laws require. Hellmann v. Sparks, 2015 WL 1021307 at *5 (Mo. App. S.D. Mar. 6, 2015) ("[I]nterpretation of subdivision declarations is governed by the same rules as contract interpretation, and generally speaking that means applying the plain meaning of the terms the parties used."). While we do not suggest that the method Schulte proposes as a rule for determining the presence of a quorum is unreasonable, the By-laws adopted by the Association do not employ this method, but follow a different approach. Article I, Section 5 of the By-laws is unambiguous – a quorum exists when four Unit Owners are represented in person or by proxy. It is equally unambiguous, based on a plain reading of the Declaration and By-laws, that any individual who owns a unit within the Association is a "Unit Owner," regardless of whether that individual has lost voting rights as a result of unpaid assessments.

As a result, because an individual does not cease to be a Unit Owner due to a loss of voting rights, we conclude that four "Unit Owners," as the term is defined in the Declaration and By-laws, were present at the Board Meeting. Because the By-laws simply require the presence of four Unit Owners to constitute a quorum, a quorum was present at the Board Meeting, even though one of the Unit Owners was disqualified from voting. Further, the plain language of the By-laws makes clear that the affirmative vote of the three voting eligible Unit Owners present at the Board Meeting was sufficient to constitute a valid Board action. Article I, Section 5 specifies that "any action may be taken at any meeting of the voting members at which a quorum is present upon the affirmative vote of a majority of the voting members present at such meeting." A quorum was present at the Board Meeting and the three voting members voted unanimously in favor of filing suit against Schulte for unpaid assessments. Accordingly, there was an

10

affirmative vote of the majority of the voting members present at the meeting as required under the By-laws. While Schulte correctly notes that such a quorum and voting scheme allows for less than a majority of the six Unit Owners to authorize the Board to act, and may potentially lead to an undesirable scenario where Board action occurs upon the affirmative vote of only one Unit Owner eligible to vote, we are constrained by the plain language of the By-laws. The By-laws were duly adopted by the Association and may be amended at any time under the procedures set forth in Article VII of the By-laws. Should the Board wish to change the provision addressing quorum requirements, it may freely do so. We lack the authority to make such change.

## II. Efthim's Authority to Act on the Association's Behalf

Schulte next argues that Efthim and counsel were not authorized to file suit against Schulte on the Association's behalf because there is no evidence that Efthim or counsel had been retained by the Association at the time the lawsuit was filed. Schulte points to the 2005 Consent Judgment, which appointed Efthim to serve as the Association's Manager until June 9, 2010. Schulte maintains that no evidence was presented showing that the Association ever voted to retain Efthim after June 9, 2010.[3] We disagree.

Schulte's contention that Efthim was not authorized to act on the Association's behalf turns entirely upon his claim that "there is no evidence that the Board ever hired Efthim after its court-ordered authority expired in 2010." This claim is not supported by the record. Instead, our review of the record yields the opposite conclusion – that Efthim was retained as Manager for the

---

[3] There is no dispute that the Association was authorized under the Declaration and By-laws to file suit against Schulte for unpaid assessments. The Association has the right to exercise any legal remedies for the collection of unpaid assessments under Article IV, Section 8 of the By-laws, and may authorize the Manager and attorneys to file suit on its behalf. The issue is whether Efthim and counsel were authorized to do so on behalf of the Association.

Association after 2010, and was specifically authorized by the Board to file suit against Schulte on the Association's behalf.

The 2005 Consent Judgment appointed Efthim as Manager of the Association for a term of five years. The 2005 Consent Judgment directed that, at the expiration of the five-year term, "management of Mannering Condominium shall revert back to the individual owners and shall occur in accordance with the Indentures and By-laws of Mannering Condominium Association." The Association's Declaration and By-laws explicitly provide the Board with the authority to retain a Manager and to empower that Manager to pursue remedies in the event of unpaid assessments or other default by Unit Owners.[4] The voting requirement for any Board action, including retention of a Manager, is outlined in Article I, Section 5 of the By-laws: "any action may be taken at any meeting of the voting members at which a quorum is present upon the affirmative vote of a majority of the voting members present at such meeting." Thus, although Efthim's court-appointed term as Manager expired on June 9, 2010, the Association was free to retain Efthim pursuant to the Declaration and By-laws at any point thereafter. The Association did precisely that.

The record reflects that the Association continued to engage Efthim as Manager after June 9, 2010, and continued to authorize Efthim to carry out management responsibilities and take action on behalf of the Association. Frank, the owner of Efthim, testified that Efthim is the "managing agent" for the Association and has been since the 2005 Consent Judgment. Frank

---

[4] Article XIV of the Declaration provides that "[t]he Board shall have the authority to retain the services of any person or entities, including, without limitation, the services of a person or entity to act as manager or managing agent for the Property." Article XVII of the Declaration provides that "[i]n the event of any such default by any Unit Owner, the Association and the Board, and the Manager if so authorized by the Board, shall have the authority to correct such default." Article II, Section 5 of the By-laws authorizes the Board to "engage the services of a Manager… who shall manage and operate the Property and the Common Elements thereof for all of the Unit Owners, upon such terms and for such compensation and with such authority as the Board may approve." Finally, Article VI of the By-laws states that "[t]he Board is hereby expressly given authority to engage the services of a manager."

12

also described the duties Efthim undertakes as the managing agent: "[w]e basically handle all the financial concerns of the association. We collect the fees and we pay the bills and we oversee maintenance through the organization." Frank further explained that Efthim is responsible for the accounting and collection of the Association's assessment to pay for maintenance of the common elements. With respect to Schulte's unpaid assessments, Frank testified that Efthim, as managing agent for the Association, prepared a lien against Schulte's unit and directed counsel to file the lien. Frank also stated that the Association directed Efthim to file a lawsuit against Schulte to collect the unpaid assessments, and that Efthim in turn retained counsel to file the suit. Frank additionally confirmed that the Board directed Efthim to file suit against Schulte at the Board meeting. Thus, the record is clear that the Association authorized and directed Efthim to continue to serve as Manager and act on the Association's behalf after June 9, 2010.

Further, even had Efthim not been officially retained as Manager after June 9, 2010 and prior to the Board Meeting, it is clear that the Association authorized Efthim to act on its behalf and file suit against Schulte specifically by virtue of the unanimous vote taken at the Board Meeting. As explained, the Declaration and By-laws give the Board broad authority to retain the services of a Manager, hire attorneys, and pursue all remedies for unpaid assessments, including authorizing the Manager to do so on its behalf. Any such Board action is binding upon the Association so long as it is adopted by an affirmative vote of a majority of the voting members present at a meeting at which a quorum is present, as required by Article I, Section 5 of the By-laws. Thus, as long as a quorum is present at a Board meeting and a majority of the voting members present at the Board meeting approves, the Board is empowered to authorize a third party to file suit against a delinquent Unit Owner on the Association's behalf. Schulte concedes as much, admitting in his brief that "if the Board of Managers issued a resolution approving the

13

filing of suit against Appellant at a *different* meeting, at which a quorum was present, then [counsel] and Efthim… might have had the authority to have caused the suit to be filed against Appellant." That is, however, precisely what happened at the Board Meeting – the Board, with a quorum present, issued a resolution approved by a majority of the voting members present authorizing Efthim and counsel to file a lawsuit against Schulte on the Association's behalf.

Conclusion

Because there was a quorum present at the Board Meeting, and because the record reflects that Efthim and counsel were authorized to act on behalf of the Association in filing suit against Schulte, there are sufficient facts to support the trial court's determination that the plaintiffs in the original lawsuit had standing. Accordingly, the trial court did not err in entering judgment in favor of the Association. The judgment of the trial court is affirmed.

_____
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

14