VICTOR C. HOWARD, JUDGE
*34 Ronald Calzone and Michael Moon (Appellants) filed this action for declaratory judgment and to enjoin the Secretary of State from placing on the November 2018 general election a ballot measure directly referred to the people by the General Assembly. The measure was introduced and ultimately passed by the General Assembly as H.B. 1460. Appellants asserted that H.B. 1460 is unconstitutional due to procedural infirmities. The circuit court entered judgment on the pleadings in favor of the Secretary of State. The case is not ripe for pre-election judicial review. Pursuant to Rule 84.14,[1] this court issues the judgment that the trial court should have entered and dismisses the petition without prejudice.
Background
H.B. 1460 was first introduced and read in the Missouri House of Representatives on January 3, 2018, as a bill with the title, "AN ACT To repeal section 143.121, RSMo, and to enact in lieu thereof one new section relating to a tax deduction for certain Olympic athletes." On May 18, 2018, the Missouri Senate third read and passed Senate Substitute 2 for H.B. 1460. The same day, the Missouri House truly agreed and finally passed Senate Substitute 2 for H.B. 1460. When H.B. 1460 was finally passed, its title was, "AN ACT To repeal sections 142.803 and 143.121, RSMo, and to enact in lieu thereof three new sections relating to state revenues, with a referendum clause." The Speaker of the House and Pro Tem of the Senate signed H.B. 1460 on May 30, 2018, and H.B. 1460 was delivered to the Secretary of State's Office that day. The General Assembly included an official ballot title, including a summary statement and fiscal note summary. On June 1, 2018, the Secretary of State certified the General Assembly's official ballot title.
Appellants filed this lawsuit against the Secretary of State and others on July 2, 2018. They claimed that H.B. 1460 violates the Missouri Constitution's original purpose, single-subject, and clear-title requirements in Article III, sections 21 and 23 of the Missouri Constitution. They also claimed Article III, sections 21 and 23 were violated when H.B. 1460's title was changed during the amendment process. SaferMO.com, a political action committee and supporter of the ballot measure, and its treasurer, Terry Briggs, filed a motion to intervene, and the trial court sustained the motion. The Secretary and other defendants filed a motion to dismiss based on ripeness or, in the alternative, motion for judgment on the pleadings.
Following written and oral arguments of the parties, the circuit court entered judgment in favor of the Secretary of State and other defendants. It found that the case is ripe and that H.B. 1460 does not clearly and undoubtedly violate article III, sections 21 and 23. This appeal by Appellants followed.
Ripeness
Before addressing Appellants' claims that H.B. 1460 violates *35 article III, sections 21 and 23, this court must determine whether the issues present a justiciable controversy. Ripeness, like standing, is an element of justiciability. Schweich v. Nixon , 408 S.W.3d 769, 773-74 (Mo. banc 2013). A case is ripe if "the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." Id. at 774 (internal quotes and citation omitted). "A court cannot render a declaratory judgment unless the petition presents a controversy ripe for judicial determination." Id.
Missouri courts recognize and follow a general rule against pre-election judicial review concerning the substantive legality of ballot measures. Manz v. Prairie Township Fire Protection Bd. , 463 S.W.3d 831, 835 (Mo. App. W.D. 2015) ; State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos , 35 S.W.3d 457, 468 (Mo. App. E.D. 2000). The rationale for such rule is that because the election might result in the proposed measure being voted down, no justiciable controversy ripe for adjudication exists unless and until the measure is approved and becomes law. Klos , 35 S.W.3d at 468 (citing State ex rel. Trotter v. Cirtin , 941 S.W.2d 498, 500 (Mo. banc 1997), and other cases). "Courts do not sit in judgment on the wisdom or folly of proposals. Neither will courts give advisory opinions as to whether a particular proposal would, if adopted , violate some superseding fundamental law...." Missourians to Protect the Initiative Process v. Blunt , 799 S.W.2d 824, 827 (Mo. banc 1990). See also Boeving v. Kander , 496 S.W.3d 498, 511 (Mo. banc 2016) ; Brown v. Carnahan , 370 S.W.3d 637, 645 (Mo. banc 2012).
Courts may, however, consider procedural or ballot issues that have a bearing upon the integrity of the election itself prior to presentation of a proposal to the people. Cirtin , 941 S.W.2d at 500 ; Manz , 463 S.W.3d at 836. "Our single function is to ask whether the constitutional requirements and limits of power, as expressed in the provisions relating to the procedure and form of initiative petitions, have been regarded." Missourians to Protect the Initiative Process , 799 S.W.2d at 827. Accordingly, "pre-election challenges are limited to claims that procedures for submitting a proposal to the voters were not followed." City of Kansas City v. Kansas City Bd. of Election Comm'rs , 505 S.W.3d 795, 798 (Mo. banc 2017).
The circuit court determined that this case is ripe pre-election under Missourians to Protect the Initiative Process v. Blunt , 799 S.W.2d 824 (Mo. banc 1990). That case involved a proposed initiative petition to amend the state's constitution. Id. at 826. The trial court enjoined the Secretary of State from placing the initiative proposal on the ballot finding that it did not comply with the provisions of article III, section 50 requiring that petitions for constitutional amendments contain no "more than one subject and matters properly connected therewith." Id. at 826-27. On appeal, the Secretary of State and the intervenor that originally submitted the proposed initiative petition argued that the trial court did not have authority to consider whether the proposal complied with the single subject requirement of article III, section 50 prior to the election. Id. at 827.
The Missouri Supreme Court disagreed. It noted several cases in which courts conducted pre-election reviews to determine if conditions precedent to placing a proposal on the ballot were met. Id. at 828. It held that ultimately, the plain language and reasonable construction of the constitution and statutory provisions relating to the initiative process governs pre-election judicial review of initiative measures. Id.
*36 The Court explained that among other prerequisites, article III, section 50 provides, "Petitions for constitutional amendments shall not contain more than one amended and revised article of this constitution, or one new article which shall not contain more than one subject and matters properly connected therewith." Id. It held that any reasonable construction of article III, section 50 leads to the inescapable conclusion that if the prerequisites of the article are not met, the proposal is not to be on the ballot. Id. The Court further explained that the legislature charged the Secretary of State with determining whether an initiative petition complies with the Missouri Constitution and chapter 116, which at a minimum requires the Secretary to insure that the threshold requirements of article III, section 50 are met, and that after the Secretary certifies a petition as sufficient or insufficient, any citizen may apply to the circuit court to compel the Secretary to reverse the decision. Id. at 828-29 (citing §§ 116.120.1 and 116.200, RSMo 1986 ). Thus, under the constitution and statutes relating to the initiative process, any controversy as to whether the prerequisites of article III, section 50 have been met is ripe for judicial determination when the Secretary of State makes a decision to submit or refuse to submit an initiative to the voters. Id. at 828.
This case, however, does not involve an initiative petition but a referendum ordered by the General Assembly. Under article III, section 49 of the Missouri Constitution, the people reserve to themselves two powers to enact and reject laws: "The people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, independent of the general assembly, and also reserve power to approve or reject by referendum any act of the general assembly except as hereinafter provided." The first power is the initiative, and the second is the referendum. Stickler v. Ashcroft , 539 S.W.3d 702, 712 n.8 (Mo. App. W.D. 2017) (quoting MO. CONST. art. IV. § 57 (1908), the amendment that created the initiative and referendum). An initiative allows the people to bypass their elected representatives and reserves direct lawmaking power with the voters of the state. Brown v. Carnahan , 370 S.W.3d 637, 673 (Mo. banc 2012) (Fischer, J., concurring). An initiative petition can propose amendments to the constitution or can propose laws. MO. CONST. art. III, §§ 49 and 50.
On the other hand, a referendum is a reservation by the people of the right to have submitted to them for their approval or rejection any laws passed by the legislature, with certain exceptions. State ex rel. Drain v. Becker , 240 S.W. 229, 230-31 (Mo. banc 1922). A referendum is also a constitutionally authorized method for the general assembly to delegate its legislative authority. Akin v. Dir. of Revenue , 934 S.W.2d 295, 299 (Mo. banc 1996). The purpose of a referendum is to suspend or annul a law that has not gone into effect and to provide the people a means of giving expression to a legislative proposition and require their approval before it becomes operative as law. Stickler , 539 S.W.3d at 713. The veto power of the governor does not extend to measures referred to the people, and any measure referred to the people takes effect when approved by voters.[2]
*37 MO. CONST. art. III, § 52(b). A referendum may be ordered either by petitions signed by voters or by the general assembly. MO. CONST. art. III, § 52(a).
Article III, section 50 sets forth the requirements for the form and procedure of initiative petitions proposing constitutional amendments or statutory enactments including single-article and single-subject requirements for proposed constitutional amendments, single-subject and clear-title requirements for proposed statutory enactments, and signature requirements and filing deadlines for both types of initiative petitions. Boeving , 496 S.W.3d at 512. Under Missourians to Protect the Initiative Process , challenges based on those requirements may be asserted prior to the election. Id. ; Missourians to Protect the Initiative Process , 799 S.W.2d at 828. Article III, section 50, however, does not apply to referendums, and, indeed, Appellants did not challenge H.B. 1460 on that basis.
The procedure for referendums is governed by article III, section 52(a). It provides:
A referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools) either by petitions signed by five percent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, as other bills are enacted. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded.
MO. CONST. art. III, § 52(a). It contains a signature requirement and filing deadline for referendums ordered by petitions signed by voters. Id. It does not contain original purpose, single-subject, or clear-title requirements for either a referendum ordered by petitions signed by voters or by the general assembly. Appellants do not challenge H.B. 1460 under any threshold requirement of article III, section 52(a) for placement on the ballot of a referendum ordered by the general assembly.
Appellants did argue in the trial court that their challenges under article III, sections 21 and 23 are themselves procedural and not substantive, thus, the case is ripe for pre-election judicial review. While Appellants are correct that article III, sections 21 and 23 are procedural limitations on the legislative process, SSM Cardinal Glennon Children's Hosp. v. State , 68 S.W.3d 412, 416 (Mo. banc 2002), challenges under these sections require review of the language of the bills themselves rather than the procedures followed to enact them. Furthermore, the limitations are not contained in article III, section 52(a) or any other constitutional or statutory provisions relating to the procedure and form of referendums ordered by the general assembly. As discussed, pre-election challenges are limited to claims that the procedures for submitting a proposal to the voters were not followed. Kansas City Bd. of Election Comm'rs , 505 S.W.3d at 798. Nothing in the constitutional provisions relating to procedure and form of referendums ordered by the general assembly supports pre-election judicial review of Appellants' claims under article III, sections 21 and 23.
*38 Similarly, nothing in Chapter 116, which applies to elections on statewide ballot measures, supports pre-election judicial review in this case. Chapter 116 authorizes certain pre-election challenges to ballot measures. See §§ 116.190 (fair ballot language statement), 116.190 (ballot title and fiscal note), 116.120, RSMo 2016 (sufficiency of initiative or referendum petitions). Appellants' claims, however, do not challenge the official ballot title or fiscal note or the fair ballot language prepared for H.B. 1460. Furthermore, section 116.200 does not apply to a referendum ordered by the general assembly.
In sum, the constitutional and statutory provisions relating to the procedure and form of referendums ordered by the general assembly do not support pre-election review of Appellants' challenges under article III, sections 21 and 23. And because H.B. 1460 may never be enacted by voters, Appellants' claims are not ripe. Pursuant to Rule 84.14, this court will issue the ruling that the trial court should have entered. The Appellants' petition is dismissed without prejudice. See Schweich , 408 S.W.3d at 779 (dismissing without prejudice under Rule 84.14 where claim not ripe).
All concur.

"The appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14.

The referendum at issue in this case gives the General Assembly the authority to bypass the Governor's power to sign or veto the bill and grants to the voters the power to enact or reject the bill through the ballot box. A challenge to a bill brought after it is adopted by the general assembly but before the governor takes action to sign or veto the bill would not be considered by this court as it would not be ripe.