Poole HARRISON, Appellant,

v.

MONROE COUNTY, et al.,
Respondents.

No. 67407.

Supreme Court of Missouri,
En Banc.

Sept. 16, 1986.

Rehearing Denied Oct. 14, 1986.

Wm. Patrick Cronan, Columbia, for appellant.

William L. Webster, Atty. Gen., Warren D. Weinstein, Asst. Atty. Gen., Curtis F.

Thompson, Jefferson City, Louis J. Leonatti, Ann P. Hagan, Paul A. Seigfreid, Mexico, for respondents.

Thomas D. Graham, W.B. Tichenor, Jefferson City, for amicus curiae.

## PER CURIAM.

The issue in this case is whether Senate Bill 601 (82nd General Assembly, 2nd Regular Session) (effective August 13, 1984) (Laws of Missouri, 1984, pp. 342–349) (hereafter "S.B. 601"), which approves additional compensation for certain county officials, funded by the assessment of additional court costs in civil cases, violates Mo. Const. art. I, § 14 and art. X, § 21. The trial court dismissed appellant's petition with prejudice. Plaintiff appealed. Because this appeal involves the constitutional validity of a statute of this state, we have jurisdiction under Mo. Const. art. V, § 3. The judgment of the trial court is reversed and remanded with directions.

### I.

Appellant Poole Harrison is a taxpayer domiciled in Monroe County, Missouri. On July 5, 1984, he filed this action against Monroe County, county treasurer Estelle Wills, associate circuit clerk Betty Hitchcock, Oscar L. Tawney, the circuit clerk, then state treasurer Mel Carnahan and the State of Missouri, challenging the constitutionality of S.B. 601.[1]

Senate Bill 601 provides additional compensation for all state prosecutors [2] and for county clerks[3], county collectors, county as-

---

1. Appellant's petition averred S.B. 601's constitutional infirmity under Mo. Const. art. I, § 14; art. II, § 1; and art. X, §§ 21, 22(a) and 23. On appeal, appellant limits his claim to art I, § 14 and art. X, § 21.

2. Issues relating to the validity of additional compensation granted prosecutors are no longer before the court. Plaintiff abandoned his claim for injunctive relief and his challenge to the constitutionality of the pay raises for prosecuting attorneys at the beginning of the hearing at the trial court.

3. Representative of the compensation statutes contained in S.B. 601 is § 51.303, RSMo Cum. Supp.1984, which provides:

   Each county clerk, except in counties of the first class with a charter form of government and in counties of the first class without a charter form of government which do not adjoin another first class county, upon certification by the Missouri association of county clerks of attendance at a training program required by the provisions of section 67.130 RSMo, shall receive annual compensation of four thousand dollars for the year 1985, and a proportionate part of four thousand dollars for that part of the year 1984 when this sec-

sessors, county treasurers, county auditors, county sheriffs, county recorders of deeds, and public administrators in certain classes of counties. County commissioners are authorized additional compensation, as well.

In order to receive the additional compensation authorized in S.B. 601, these county officials are required to attend a training program conducted by the "County Officials Training Commission" for the purpose of instructing county officials in how "to deal with areas of concern in intergovernmental relations between state offices and ... county officers." § 67.130, RSMo Cum.Supp.1984. The additional compensation is funded by the assessment of four dollars court costs in both criminal and civil proceedings.[4]

The S.B. 601 fees are collected by the clerk of the court and paid monthly to the county treasurer who transmits the funds to the state treasurer for deposit in the "County Officers Compensation Fund." The state treasurer is required to reimburse each county that pays the additional compensation to the county officers for the amounts paid by the county to such officers. If monies in the county officers compensation fund are exhausted by reimbursements, the reimbursements from the state to the counties are to be prorated. § 67.133, RSMo Cum.Supp.1984.

The trial court's judgment entry provided, in pertinent part, that the "Plaintiff has failed to establish, by his evidence and under the applicable case law, that Senate Bill 601 violates any rights of the Plaintiff under the due process and/or equal protection clauses of the United States and Missouri Constitutions." The trial court further ruled that the "evidence as presented is uncertain as to the amount of funds which will be available for reimbursement to the counties from Senate Bill 601 and, therefore, Plaintiff's claim is not ripe for adjudication." The trial court dismissed appellant's petition with prejudice.

■

■ Respondents challenge appellant's standing to contest the provisions of S.B. 601, claiming that appellant filed his action prior to the effective date of the law, has not paid the additional costs mandated by S.B. 601 and has, therefore, suffered no injury. Appellant contends that his "rights have been injuriously affected" by the requirement that he pay the additional court costs required by S.B. 601.

Appellant filed his lawsuit on July 5, 1984, well in advance of the August 13, 1984, effective date of S.B. 601. The filing fee appellant paid on July 5 did not include the four dollars mandated by S.B. 601. Under our system of cost assessment, the filing fee is deposited as the initial security for anticipated court costs. Rule 77.02. The prevailing party generally does not bear final responsibility for court costs. Under Rule 77.01, court costs are paid by the losing party. This appellant's liability for S.B. 601 court costs is, therefore, contingent upon his failure to prevail in the action filed.[5]

The requirement that a party have standing to bring an action is a component of the general requirement of justiciability. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In the federal context, this requirement of justiciability arises from the language of Article III, § 2 of the United States Constitution,

tion is in effect, for the added duty of attending the training program required by the provisions of section 67.130, RSMo. This additional compensation shall be paid in the same manner and at the same times as his other compensation.

4. In addition to the $4.00 court costs imposed to provide additional compensation for county officials, a $3.50 fee is required in criminal cases (excluding most non-moving traffic violation cases) to fund increased compensation for prosecuting attorneys. § 56.790.2, RSMo Cum. Supp.1984.

5. The trial court assessed court costs against appellant in its judgment. The deputy court clerk acknowledged that the nonprevailing party would be assessed the court costs required by S.B. 601.

which extends judicial power of the federal courts to

all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made or which shall be made under their authority; to all cases affecting ambassadors, other public ministers, and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

*Warth,* 422 U.S. at 498, 95 S.Ct. at 2204. The Missouri analog to this provision is found in Mo. Const. art. V, § 14(a), which states that "[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal...."

Addressing the subject under the Federal Constitution, the United States Supreme Court has stated:

As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.

*Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2204–05, *quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This "personal stake," in turn, generally depends upon whether the plaintiff can allege "some threatened or actual injury resulting from the putatively illegal action." *Linda R.S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); *see also Massachusetts v. Mellon,* 262 U.S. 447, 448, 43 S.Ct. 597, 598, 67 L.Ed. 1078 (1923) ("The party who invokes the [judicial] power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the

result of its enforcement...."). The same requirement of justiciability exists under Missouri law. *See State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. banc 1982); *State ex rel. City of St. Louis v. Litz,* 653 S.W.2d 703, 706 (Mo.App.1983); *Schweig v. City of St. Louis,* 569 S.W.2d 215, 220 (Mo.App.1978); *Hribernik v. Reorganized School District R–3,* 276 S.W.2d 596, 598 (Mo.App.1955).

Additional prudential limitations—born of a concern that courts refrain from addressing abstract questions of wide public significance which are more appropriately addressed by other governmental institutions—have been recognized as extra-constitutional limits on standing. *Warth,* 422 U.S. at 499–501, 95 S.Ct. at 2205–2206. These include the requirement, in cases where the claim is based on a statute or constitutional provision, that "the constitutional or statutory provision on which the claim [to relief] rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500, 95 S.Ct. at 2205. A more familiar expression of this same concept is the statement that "the interest sought to be protected by the complainant" must arguably be "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

Applying these standards to the present case, we conclude that plaintiff is constitutionally and prudentially entitled to invoke the jurisdiction of the courts of this state to consider the particular claim to relief he asserts. Plaintiff satisfies the requirement that he have a "personal stake," arising from a "threatened or actual injury," since he must prevail on his claim in order to prevent the imposition upon him of the putatively illegal fee. It makes no difference to the resolution of the standing question that the threatened injury would not have existed had the present suit not been filed. Once the suit was filed, the condi-

tions necessary for standing came into being.

As for the "zone of interests" limitation, appellant satisfies this requirement also; he is a citizen of a local community who is being called upon to pay for, at a local level, what is at least arguably required to be paid for by the state under art. X, § 21. *See Boone County Court v. State*, 631 S.W.2d 321 (Mo. banc 1982). Furthermore, it is self-evident that appellant, as the party initiating this suit, is among the intended beneficiaries of the guarantee of art. I, § 14 that justice be administered "without sale, denial or delay." He is therefore a member of the class sought to be protected by the constitutional provisions in question.

### III.

Appellant contends that the court costs imposed in civil cases by S.B. 601 constitute a sale of justice in violation of art. I, § 14.[6] We agree.

■ Art. I, § 14 embodies the principle found in Chapter 40 of the Magna Carta that "To no one will We sell, to no one will We deny or delay, right or justice." The obvious focus of Chapter 40 is the sale of justice, through bribery, by the magistrates of King John's time. In its modern manifestations, however, the constitutional proscription against the sale of justice extends to guarantee access to the courts without a requirement of payment of unreasonable charges. *Malin v. La Moure County*, 27 N.D. 140, 145 N.W. 582, 586 (N.D.1914); *Flood v. State ex rel. Homeland Co.*, 95 Fla. 1003, 117 So. 385, 387 (Fla.1928). Reasonable court costs, however, do not offend art. I, § 14. *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d 86, 107 (banc 1944).

Respondents argue that the duties of the county officials whose compensation is enhanced by civil court costs required by S.B. 601 are "reasonably related to the functioning of the circuit court." The test is not whether the duties of the county officials are reasonably related to the functioning of the court. Were that the test, court costs could be collected to pave roads leading to the courthouse.

■ The proper test is whether the court costs required are reasonably related to the expense of the administration of justice. Examined under this test, S.B. 601 civil court costs bear no reasonable relationship to the expenses of the administration of justice; S.B. 601 civil court costs are collected to enhance the compensation of officials of the executive department of county government. We, therefore, hold that the fees imposed in civil cases by S.B. 601 are unreasonable impediments to access to justice in violation of art. I, § 14.

### IV.

In his pleadings, appellant avers that the increased compensation provided county officials in S.B. 601 offends the provisions of art. X, § 21 which require the state to finance "an increase in the level of any activity or service beyond that required by existing law ... of counties...." On August 5, 1986, the voters of this state approved Senate Joint Resolution No. 34, amending Mo. Const. art. VI, § 11. As amended, art. VI, § 11 now provides in part pertinent to the issue raised by appellant that "[a] law which would authorize an increase in the compensation of county officers shall not be construed as requiring a new activity or service or an increase in the level of any activity or service within the meaning of this constitution...."

Because art. VI, § 11 has been amended, and because the effect of that amendment is not properly before us in this case, we choose not to reach appellant's art. X, § 21 claim.

### V.

The civil court cost provisions of S.B. 601 violate art. I, § 14. The judgment of the

---

**6.** Art. I, § 14 provides:
    That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

trial court is reversed and the cause remanded with directions to enter judgment in appellant's favor on his art. I, § 14 claim.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., concurs in separate opinion filed.

WELLIVER, Judge, concurring.

I concur in the principal opinion which holds that the court costs imposed by S.B. 601, § 67.134, RSMo Supp.1985, constitute a sale of justice in violation of Mo. Const. art. I. § 14.

I write separately to express my deep concern because I believe that access to the courts is being denied a large segment of lower income Missourians because of increasing court costs. The now approaching $100 court cost deposit in a circuit court civil case effectively bars many lower income Missourians from asserting meritorious claims in the court system.

To illustrate, the required court cost deposit in a circuit court civil case in my home county of Boone has been:

| 1971 | $25.00 |
|------|--------|
| 1973 | $40.00 |
| 1978 | $46.00 |
| 1980 | $66.00 |
| 1983 | $86.00 |
| 1985 | $91.00 |

The trend has been the same in all Missouri counties, some I am told ranging as high as $95 to $105. There is no question that the escalating cost of living has had its impact on total court costs, but rising court costs have far outstripped the rising cost of living index.

The problem of rising court costs has not been unnoticed nationally. COSCA, the national Conference of State Court Administrators, associated with the Conference of Chief Justices and the National Center for State Courts, for more than two years has been addressing the problem nationwide through a special "Committee To Examine Court Costs: Filing Fees, Surcharges and Miscellaneous Fees." That committee was chaired by Ms. Jane Hess, State Court Administrator for Missouri. The report, based upon a Survey of Practice in the courts of all of the states, was presented to the annual meeting in Nebraska in August, 1986, and was unanimously adopted, and a copy thereof is placed in the file for reference.

The purposes and goals of the COSCA committee are best described in two paragraphs of the Introduction to the Committee Report:

Not surprisingly the basic concepts advocated in these standards are nothing more than a restatement of basic constitutional rights and powers. The standards promulgated by this Committee represent what the Committee believers should exist in an "ideal" judicial system. They should allow the judicial branch of government to perform its primary function to adjudicate disputes openly and without regard to any measure of social status. The standards are offered with an understanding of the historical, political, and budgetary realities facing courts and legislative bodies and are intended to be used as a model when states consider changes in their fees' systems. The survey data indicate that some states are in substantial compliance with these standards while others may wish to undertake a self-examination to determine if any of the proposed standards would be beneficial to their judicial system.

Practically, any state undertaking the adoption of these standards is not likely to change current practice overnight. However, judiciaries should discourage the addition of more surcharges than already exists. They should support legislative review of those surcharges in existence and encourage their legislatures to enact sunset clauses or repeal them outright. Working with legislators to enable them to understand the insidious nature of surcharges and the deprivation of the legislator's own power of review is probably a more effective approach than

challenging the statutes and holding them unconstitutional.

Introduction to Report of COSCA Committee To Examine Court Costs Report, adopted June 1986.

Section 1 of the report defines "Fees", "Miscellaneous Charges" and "Surcharges", all of which combine to make up Section 1.4, "Court Costs-Amounts assessed against a party or parties in litigation...."

Section 1.3 defines "Surcharges—Amounts added to fines, fees, or court costs that are used for *designated purposes.*" (emphasis added). The commentary states with reference to surcharges:

> "Surcharges" are certain add-on charges with the revenues generated earmarked for specific purposes. Presently these funds are most often passed through the courts' registries and disbursed directly into an account that may be expended only for the purpose that has been earmarked either at the state or local level. Later recommendations contained in this report call for an end to this practice, but a definition is necessary for understanding throughout the report. Although "surcharge" is the most appropriate label, in some states these charges are deductions from flat filing fees. Examples of surcharges are law library funds, domestic violence shelter funds, retirement funds for judges, state police and sheriffs, funds for indigent defense, law enforcement halls of fame funds, specific funds for departments of transportation, funds identified for departments of health and social services, victims of crime funds, and innumerable training funds for law enforcement, prosecutors and others, and funds for buildings and facilities.

The Standards recommended by the committee report are addressed as follows:

### 3.0 PROHIBITING SURCHARGES AND LOCAL CHARGES

**3.1 Surcharges should not be established.**

COMMENTARY

The practice of earmarking funds for special purposes should be eliminated.

Some surcharges are presently used for purposes related to the judiciary. Others are used for purposes that have no relationship to the operation of the judicial system. Neither are appropriate. If taxation is a prerogative of the legislative branch of government, the practice of earmarking funds escapes the priority setting process existing in most progressive governmental entities. Neither use should escape the appropriations' review process nor should the amount of a public good to be provided by such funds be necessarily limited to the amount of revenue generated by a surcharge for the purpose. If the purpose funded by a surcharge is for the greater public good it should be worthy for consideration of funding from a broader general revenue source through the normal appropriation process.

Some have argued, citing lower court decisions that surcharges are unconstitutional because they are not related to the conduct of the case; other, that surcharges are, at best, illogical.

> The benefit derived from the efficient administration of justice is not limited to those who utilize the system for litigation, but is enjoyed by all those who would suffer if there were no such system—the entire body politic. It makes no more sense to burden litigants with paying for judicial retirement than it would to install a turnstile at the door to the governor's office and to pay his salary with admission fees charged to those who seek his counsel. If no one were to utilize the court system in any given terms, the judges' salaries would still have to be paid, and the retirement system would still require funding.

Richard F. Hayse, Kansas Court Costs: The Quality of Mercy is Strained, Washburn Law Journal 9 (1969) p. 95.

Examples from the COSCA National Survey on Court Costs indicate that there is a proliferation of surcharges in several states; some meritorious for public funding, others more reflective of interest groups that should seek private

funding from persons of similar interests. Salaries of public officials, maintenance of public buildings, retirement funds of public officials, and other such public uses clearly should not have to rely on the generation of funds through a user tax placed on persons seeking their constitutional right of access to the courts. The citizen who exercises his right to vote is not charged for the exercise of that right. If crime victim compensation funds are in the public interest then surely those who find themselves using the courts should have no more obligation to contribute to such a fund than any citizen who could at any time become a victim of crime and have a need to utilize such funds. The same illogical premise exists in states that establish abuse centers by assessing a surcharge to those who apply for marriage licenses. Democratic forms of government are threatened by these insidious forms of taxation.

A concern of the judiciary must be for the appearance of impropriety that results when the burden of taxation for the support of "public good" is placed on users of the court system. Surcharges are vulnerable to being viewed with suspicion at best. Surcharges based on convictions present an even higher potential for conflict of interest claims.

Another concern is the complication and confusion created by a number of surcharges on the administration of monies handled by clerks of the court. **3.2 Fees and miscellaneous charges should not incorporate surcharges.** (Commentary omitted).

**3.3 Optional local fees or miscellaneous charges should be prohibited.** (Commentary omitted).

In addition to the section of our statutes addressed in the principal opinion relating to the County Officers Compensation Fund, § 67.134, RSMo Supp.1985, Missouri has several other "Surcharges" on court costs which are rendered suspect both by the COSCA recommended standards and by the principal opinion. Section 57.955, RSMo Supp.1984 adds a surcharge of $3 per case for a Sheriff's Retirement Fund. Section 595.045, RSMo Supp.1985 adds a surcharge of $36.00 or $26.00 in each criminal case, for crime victims compensation depending on the date of the offense. Section 590.-140, RSMo 1978, adds a surcharge of $2.00 in each criminal case, for Law Enforcement Training. Section 56.790, RSMo Cum.Supp. 1984 adds a surcharge of $3.50 in each criminal case, for the Prosecuting Attorneys' Reimbursement Fund. Section 56.-765, RSMo Cum.Supp.1984 adds a surcharge of $1.00 in each criminal case, for the Prosecuting Attorneys' Training Fund. Section 455.205, RSMo Cum.Supp.1984 authorizes a surcharge of $10 in each dissolution case for Domestic Violence Shelters, if the county chooses to impose the fee. Section 590.140, RSMo 1978 permits a surcharge of $2.00 in all municipal cases for law enforcement training, if the municipality so authorizes.

Our own State of Missouri ranks high among the states that should take a long hard look at their entire courts costs structure. There should not be a $100 price tag on access to justice.