

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **MICHAEL MATHEWS, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD86539** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **JULY 30, 2024** |
| **FIELDWORKS, LLC,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### Appeal from the Circuit Court of Clinton County, Missouri
The Honorable Daren Lee Adkins, Judge

Before Division One:  Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Michael Mathews ("Mathews") appeals from the trial court's grant of summary judgment in favor of FieldWorks, LLC ("FieldWorks") which was entered based on a determination that Mathews did not have standing to bring claims for violations of the federal Fair Credit Reporting Act ("FCRA").[1]  While the trial court properly concluded that Mathews did not have standing to pursue the FCRA claims alleged in his petition, the trial court erroneously granted summary judgment in favor of FieldWorks when it should have entered a judgment that dismissed Matthew's action.  We exercise our discretion

---

[1] 15 U.S.C.A. sections 1681-1681x (Westlaw through Pub. L. No 118-62).

pursuant to Rule 84.14[2] to modify the judgment to reflect dismissal of Mathews's action against FieldWorks. The judgment as modified is affirmed.

**Factual and Procedural History**

FieldWorks is a District of Columbia limited liability company that provides field services (including organizing, gathering signatures, and canvassing) to nonprofit advocacy organizations, ballot measure committees, political campaigns, and candidates. When FieldWorks is contracted to provide field services, the company typically sets up temporary offices in the state and begins recruiting, screening, and employing persons to carry out the contracted work. FieldWorks requires every prospective employee to pass a criminal background check. Identified criminal convictions within a certain period of time preceding an application for employment render a prospective employee ineligible for hire.

Mathews responded to an online advertisement for a job as a polling canvasser. On November 7, 2019, Mathews went to a FieldWorks office for an interview. Mathews completed a paper application while at the FieldWorks office.[3] Mathews and other applicants were then briefed as a group about the nature of the job before each applicant was separately interviewed. At the conclusion of Mathews's individual interview, the office director offered Mathews a job conditioned on a successful background check.

---

[2]All rule references are to *Missouri Court Rules, Volume I -- State, 2024* unless otherwise noted.
[3]Mathews disputes whether he signed the paper application, but he does not dispute that he completed the paper application.

Mathews was then presented with a digital device that required him to review, complete, sign, and submit an electronic employment application form. The electronic employment application included the following disclosure:

> I CERTIFY THAT I AM AT LEAST 18 YEARS OLD AND THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND UNDERSTAND THAT, IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL. I UNDERSTAND THAT INVESTIGATIVE BACKGROUND INQUIRIES ARE TO BE MADE ON MYSELF INCLUDING CONSUMER INVESTIGATIVE CRIMINAL CONVICTIONS. FURTHER, I UNDERSTAND THAT YOU WILL BE REQUESTING INFORMATION FROM VARIOUS FEDERAL, STATE, AND OTHER AGENCIES, WHICH MAINTAIN RECORDS CONCERNING MY PAST ACTIVITIES RELATING TO ANY CRIMINAL EXPERIENCE. (DATE OF BIRTH IS REQUESTED ONLY TO CONDUCT A BACKGROUND CHECK AND WILL NOT BE USED AS CRITERIA IN THE HIRING PROCESS.)

Mathews testified in a deposition that he understood this paragraph to mean that FieldWorks "might check public records, Missouri Case.net, which is the public records for the court system," though he added that "[he] wasn't made aware that there was going to be a third party . . . obtaining [his] consumer report." Mathews admitted in a deposition that he assumed a person checking Case.net would find that he had a prior conviction for burglary in May of 2013.

FieldWorks contracts with Sterling Talent Solutions ("Sterling") to perform background checks on its applicants. FieldWorks receives a report from Sterling indicating whether an applicant's background check was "clear," meaning it revealed no issues, or resulted in an "alert," meaning there was something discovered in the applicant's background check. In the event of an "alert," a FieldWorks's staff member

3

would use FieldWorks's guidelines to determine the applicant's employment eligibility. The guidelines included a chart that specified criminal convictions which would disqualify an applicant from employment. The FieldWorks's chart specifies that an applicant who has been convicted of burglary in the seven-year period preceding the application for employment is ineligible for employment.

If a staff member's review resulted in a determination that an applicant was ineligible for employment, the staff member would initiate an "adverse action process" on Sterling's website. Sterling's website would then automatically generate an email to the applicant with a link to a portal where the applicant could review the background report and receive a summary of rights under the FCRA. If the applicant did not log into the portal within one business day of the email, Sterling would mail the applicant a copy of the background report and a summary of rights under the FCRA.

After initiating an adverse action process on Sterling's website, the Fieldworks's staff member would then change the status of the applicant in FieldWorks's database to "not approved." This database change would automatically generate an email and text from FieldWorks to advise the applicant that they did not pass the background check and would not be hired. The two-stage process of first initiating an adverse action process on Sterling's website before modifying the FieldWorks's database to change the applicant's status was intended to ensure that the automatically generated email from Sterling would be sent to an applicant before the automatically generated email and text from FieldWorks.

4

Between March 9, 2018, and August 2020, 2,602 applicants were determined to be ineligible for hire by FieldWorks following a Sterling background check. For approximately 500 of these applicants, the adverse action process (*i.e.*, the email from Sterling affording access to a portal to review the background report and a summary of rights under the FRCA) was not initiated before FieldWorks sent a separate email and text to the applicant advising they were ineligible for hire. Mathews was one such applicant. Sterling's background report revealed that Mathews had been convicted of burglary in May 2013, less than seven years before Mathew's application. Sterling's background check was accurate.

Mathews filed a two-count petition ("Petition") against FieldWorks on June 18, 2021, in the Circuit Court of Clinton County, Missouri. The Petition alleged violations of the FCRA. The Petition alleged that FieldWorks "obtained information concerning [Mathews] from Sterling Talent Solutions," and "paid a fee to Sterling Talent Solutions for the information obtained concerning [Mathews]." The Petition defined the "information obtained from Sterling Talent Solutions concerning [Mathews]" as a "Consumer Report" pursuant to the FCRA.[4] The Petition alleged that FieldWorks relied on the Consumer Report from Sterling to make decisions regarding prospective

---

[4]"The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes." 15 U.S.C.A. section 1681a(d)(1)(C) (Westlaw through Pub. L. No 118-62).

5

employees, including Mathews. The Petition then asserted two claims. Count I was labeled a "disclosure violation," and alleged that FieldWorks willfully violated the FCRA by failing to disclose "that a Consumer Report would be obtained for employment purposes" from a third party, resulting in an informational injury and an invasion of Mathews's privacy. Count II was labeled an "authorization violation," and alleged that FieldWorks willfully violated the FCRA because "[t]he documents used by [FieldWorks] to obtain a Consumer Report . . . does [sic] not contain an authorization for [FieldWorks] to obtain a Consumer Report for employment purposes," resulting in an informational injury and an invasion of Mathews's privacy.[5] In addition, the Petition included class

---

[5]According to the Petition, Mathews had earlier filed a three-count petition against FieldWorks in the Circuit Court of Clinton County in 2020 that also alleged claims under the FCRA, but that case was removed to the United States District Court for the Western District of Missouri in April 2020. The earlier filed petition alleged a disclosure violation, an authorization violation, and an adverse action claim. The United States District Court dismissed the disclosure violation and the authorization violation claims in the petition in March 2021 for lack of standing. *See Mathews v. FieldWorks, LLC*, No. 5:20-06057-CV-RK, 2021 WL 1113205, at *2 (W.D. Mo. Mar. 23, 2021). The United States District Court did not dismiss Mathews's adverse action claim at that time, however. *Id.*

After this ruling, Mathews filed the Petition in the instant case, where he reasserted FCRA claims based on a disclosure violation and an authorization violation. The Petition did not assert an adverse action claim.

While the instant case was pending, the Court of Appeals for the Eighth Circuit issued an opinion regarding a plaintiff's standing to assert an adverse action claim pursuant to the FCRA in *Schumacher v. SC Data Center, Inc.*, 33 F. 4th 504 (8th Cir. 2022). Following that opinion, the United States District Court for the Western District of Missouri *sua sponte* addressed Mathews's still pending adverse action claim under the FCRA, and concluded that Mathews had not pleaded an injury in fact in that he did not claim that the report prepared following his background check was inaccurate. *See Mathews v. FieldWorks, LLC*, No. 5:20-06057-CV-RK, 2022 WL 1477444, at *2 (W.D. Mo. May 10, 2022). As such, the United States District Court found that it did not have subject matter jurisdiction over Mathews's adverse action claim and remanded the case back to the first filed state court action in the Circuit Court of Clinton County. *Id.* A

action allegations and sought to create two putative classes (a disclosure class and an authorization class) for persons who executed FieldWorks's application forms on or after March 9, 2015, and as to whom a Consumer Report as defined in the Petition had been obtained.

On May 10, 2023, FieldWorks filed a motion for summary judgment, arguing that Mathews lacked standing to assert the FCRA claims set forth in the Petition. FieldWorks argued that Mathews actually knew from the disclosure in the electronic employment application form that FieldWorks would conduct background checks on Mathews as a condition of his employment, including a check of criminal records, and that Mathews agreed to and authorized background checks. FieldWorks also argued that Mathews did not suffer a concrete injury, and that as a result, the Petition at best alleged technical violations of the FCRA which are insufficient to confer standing.

In response to the motion for summary judgment, Mathews alleged that although he knew FieldWorks would be conducting background checks, he did not know that FieldWorks would be using Sterling to generate a Consumer Report. Mathews also argued that he was confused by the electronic disclosure and authorization form. Mathews thus claimed that he suffered a concrete injury sufficient to confer standing for his FCRA claims.

---

review of Case.net reveals that the first filed action in Circuit Court of Clinton County was thereafter dismissed by Mathews.

7

The trial court entered an order and judgment ("Judgment") on August 29, 2023, granting FieldWorks's motion for summary judgment and entering judgment in favor of FieldWorks on all counts in the Petition.

Mathews appeals.

**The Law of Standing, the Trial Court's Disposition, and Our Standard of Review**

The trial court's Judgment did not include factual findings or conclusions, but by granting the motion for summary judgment, the trial court necessarily agreed with FieldWorks's contention that Mathews did not have standing to bring his FCRA claims. "'[T]he requirement that a party have standing to bring an action is a component of the general requirement of justiciability' in both the federal context and in Missouri." *Corrozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 573-74 (Mo. App. W.D. 2017) (quoting *Harrison v. Monroe Cty.*, 716 S.W.2d 263, 265 (Mo. banc 1986)). "Justiciability is a 'prudential' rather than a jurisdictional doctrine." *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013).

"A justiciable controversy exists where [1] the plaintiff has a legally protectable interest at stake, [2] a substantial controversy exists between parties with genuinely adverse interests, and [3] that controversy is ripe for judicial determination." *Id.* at 773-74 (quoting *Mo. Health Care Ass'n v. Attorney Gen. of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997)). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id.* at 774. Standing as "'a component of the general requirement of justiciability' . . . is the state analogue to the federal 'case or controversy' requirement." *Id.* (quoting *Harrison.*, 716 S.W.2d at 265-66). Under the federal case or controversy

8

requirement, the United States Supreme Court has stated that "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Harrison*, 716 S.W.2d at 266 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). "This 'personal stake,' in turn, generally depends upon whether the plaintiff can allege 'some threatened or actual injury resulting from the putatively illegal action.'" *Id.* (quoting *Linda B.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). "The same requirement of justiciability exists under Missouri law." *Id.*; *see also Schweich*, 408 S.W.3d at 774 ("Standing requires that a party have a personal stake arising from a threatened or actual injury.") (quoting *State ex rel. Williams v. Mauer*, 722 S.W.2d  296, 298 (Mo. banc 1986)).

The requirement that the plaintiff have a threatened or real injury concerns whether the plaintiff suffered an injury in fact. *Corrozzo*, 531 S.W.3d at 574. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Courtright v. O'Reilly Auto.*, 604 S.W.3d 694, 700 (Mo. App. W.D. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). An injury is "concrete" if it actually exists, whether as a tangible injury or as an intangible injury. *Campbell v. Adecco USA, Inc.*, 561 S.W.3d 116, 121 (Mo. App. W.D. 2018) (citing *Spokeo*, 578 U.S. at 340).

9

Challenges to standing thus require a court to consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to a lack of standing. *Borges v. Mo. Pub. Entity Risk Mgmt. Fund*, 358 S.W.3d 177, 180 (Mo. App. W.D. 2012). Challenges to standing may therefore be raised in a motion to dismiss (which is limited to a review of the assertions in a petition, all of which are deemed to be true for purposes of the motion) or in a motion that requires the court to consider matters outside the pleadings, including, for example, a motion for summary judgment. *Klenc v. John Beal, Inc.*, 484 S.W.3d 351, 354 (Mo. App. E.D. 2015). However, regardless the nature of the motion raising the issue, if a trial court determines that a plaintiff lacks standing to pursue asserted claims, the required disposition is dismissal of the petition based on the absence of justiciability. *Id.* Thus, "even if the standing argument is raised in a motion for summary judgment or other motion in which matters outside the pleadings are considered, the [trial] court must still enter dismissal as opposed to summary judgment." *Id.* (quoting *Borges*, 358 S.W.3d at 180). That is because summary judgment is "an inherently merits-based disposition," where "disposing of a case for lack of standing is not a disposition of the merits." *Id.*; *see, e.g.*, *Schweich*, 408 S.W.3d at 775 (noting that if a "party is unable to show that it has standing to bring the action at all, there is no point in reaching the hypothetical issue whether the action would be timely if it could have been brought," a merits determination).

Here, FieldWorks filed a motion for summary judgment that challenged Mathews's standing to assert the FCRA claims set forth in the Petition. The motion for summary judgment relied on factual assertions in the Petition, and on uncontroverted

10

facts outside the pleadings to claim that, as a matter of law, Mathews did not have standing. When the trial court determined, as it did, that the uncontroverted facts in the summary judgment pleadings established as a matter of law that Mathews did not have standing to assert the FCRA claims in his Petition, the trial court's Judgment should have dismissed the Petition for want of justiciability, instead of granting the motion for summary judgment, a ruling that connotes a disposition on the merits.

The trial court's technical error does not impede our consideration of this appeal, however, as we are permitted by Rule 84.14 to modify the Judgment to reflect the correct procedural disposition should we conclude that the trial court's substantive standing determination was correct. "Regardless of the procedural context, our review of the court's determination regarding standing is de novo, and the party seeking relief bears the burden to establish standing." *Klenc*, 484 S.W.3d at 354. "We determine standing as a matter of law by examining the petition 'along with any other noncontested facts accepted as true by the parties at the time the motion to dismiss was argued.'" *Campbell*, 561 S.W.3d at 120 (quoting *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 572 (Mo. App. W.D. 2017); *see also CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) ("Because standing is a question of law, review of the issue on appeal is *de novo*.") (quoting *Mo. State Med. Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008)).

11

Mathews raises two points on appeal. First, he alleges that it was error to grant summary judgment because "a genuine issue of material fact exists regarding whether [Mathews] has standing to pursue his claim, in that FieldWorks violated the FCRA by procuring a Consumer Report from Smarty Streets without providing a disclosure, or obtaining an authorization, causing . . . a concrete injury." Second, he alleges that it was error to grant summary judgment because "a genuine issue of material fact exists regarding whether [Mathews] satisfies Missouri's standing requirements, in that FieldWorks violated the FCRA by providing a confusing forms [sic] and failed to obtain written authorization to obtain a Consumer Report meaning that [Mathews] suffered a concrete injury." We address the points in turn.[6]

***Point One: Mathews's Petition did not allege a violation of the FCRA based on securing data from Smarty Streets, and his attempt to raise new violations of the FCRA in response to FieldWorks's motion for summary judgment preserves no issue for appellate consideration***

Mathews's first point on appeal claims error in granting summary judgment on the issue of standing because "genuine issues of material fact" prevented the trial court from

---

[6]Mathews's points relied on each challenge the trial court's grant of summary judgment with respect to both of the claims asserted in the Petition. Rule 84.04(d)(1) requires that the grant of summary judgment of the disclosure claim (Count I) and of the authorization claim (Count II) be challenged in separate points relied on. Mathews's points are thus impermissibly multifarious. Though it would be within our discretion to deny both of Mathews's points on appeal on this basis alone, because this briefing error does not impede our ability to comprehend and review Mathew's arguments, we exercise our discretion to review his points on appeal *ex gratia. See Brown v. Brown*, 680 S.W.3d 507, 522 (Mo. App. W.D. 2023).

doing so in connection with a report procured by FieldWorks from Smarty Streets. FieldWorks argues that Mathews's first point on appeal is without merit because it addresses an alleged FCRA violation that was never pleaded in the Petition or presented to the trial court. We agree.

Because Missouri requires fact pleading, the role of a petition is to identify "the triable issues" and "the facts upon which the plaintiff's claim[s] rest[]." *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993).

> The goal of fact pleading is the quick, efficient, and fair resolution of disputes. Fact pleading identifies, narrows and defines the issues so that the trial court and the parties know what issues are to be tried, what discovery is necessary, and what evidence may be admitted at trial.

*State ex rel. Harvey v. Wells*, 955 S.W.2d 546, 547 (Mo. banc 1997). Thus, a challenge to a plaintiff's standing will necessarily be premised on the factual assertions set forth in the petition. *See Walker v. Walker*, 280 S.W.3d 634, 637 (Mo. App. W.D. 2009) ("The character of a cause of action must be determined from the factual allegations of the petition.").

The *only* consumer report about which Mathews complained in the Petition was the criminal background report FieldWorks received from Sterling. In the "Preliminary Statements" section of the Petition, Mathews defined the term "Consumer Report" by reference to the information concerning him that was obtained by FieldWorks from Sterling. The facts alleged in the "Preliminary Statements" section of the Petition, which included Mathews's self-ascribed definition of the term "Consumer Report," were then incorporated by reference in the "Factual Allegations" section of the Petition, and in

13

Counts I and II of the Petition. There is no mention in the Petition of SmartyStreets, or of any alleged violation of the FCRA associated with FieldWorks procuring of information from any third-party vendor other than Sterling. Mathews may only seek recovery on a cause of action he has pleaded. *Cf. Strange v. Robinson*, 564 S.W.3d 345, 350 (Mo. App. S.D. 2018) ("Generally '[a] trial court may not enter judgment on a cause of action that a plaintiff did not plead.'") (quoting *Rosenfeld v. Boniske*, 445 S.W.3d 81, 89 (Mo. App. E.D. 2014)).

FieldWorks's motion for summary judgment challenged Mathews's standing based on the factual assertions in the Petition, and on uncontroverted statements of fact, all of which focused on Mathews's alleged FCRA disclosure and authorization violations involving the Consumer Report FieldWorks received from Sterling. To effectively respond to the motion for summary judgment, Mathews was obliged by Rule 74.04(c)(2) to admit or deny each of the uncontroverted facts alleged in FieldWorks's motion "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2) also authorized (but did not require) Mathews to "set forth additional material facts that remain in dispute . . .supported in the manner prescribed by Rule 74.04(c)(1)"[7] in his response to a motion for summary judgment. The additional facts that are alleged in a response are material only if they would serve to defeat the right to entry of summary judgment as a matter of law.

---

[7]Rule 74.04(c)(1) requires each statement of uncontroverted material fact to be supported with "specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts."

14

*Exec. Bd. of the Mo. Baptist Convention v. Mo. Baptist Found.*, 497 S.W.3d 785, 800 (Mo. App. W.D. 2016) (observing that "facts in dispute must be material to the legal basis on which the movant seeks summary judgment") (citing *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011)).

Mathews's response to the motion for summary judgment raised as an additional uncontroverted fact that FieldWorks also used SmartyStreets, a reseller of post office data, to verify applicant addresses while the electronic employment application was being completed. Specifically, Mathews alleged as his second additional uncontroverted fact that:

> Prior to receiving Ex. 4[8] to [FieldWorks's] Motion for Summary Judgment . . . [FieldWorks] pays SmartyStreets, a reseller of post office data, for the applicant's address history to validate the applicants' addresses.

Mathews cited to the December 2, 2020 deposition testimony of a FieldWorks's corporate representative to support this additional uncontroverted fact. This deposition preceded the filing of Mathews's Petition by more than six months.[9]

In the lengthy argument portion of Mathews's response to the motion for summary judgment, Mathews vaguely urged that even if the disclosure on the electronic employment application (Exhibit 4 to the summary judgment motion) constituted Mathews's written authorization to obtain criminal records, it did not constitute written

---

[8] Exhibit 4 to FieldWorks's summary judgment motion was the disclosure language that appeared on the electronic employment application.

[9] The deposition testimony was presumably secured in connected with Mathews's first filed state court action that was removed to federal court, and then remanded and subsequently dismissed.

15

authorization to obtain non-criminal records, such as an address validation through SmartyStreets.

Mathews's first point on appeal now claims that the trial court erred in concluding that he did not have standing to pursue disclosure and authorization violations of the FCRA based on the SmartyStreets address verification process, even though no claims related to procuring data from SmartyStreets are pled in the Petition. When an alleged violation of a statute or theory of recovery is first made in response to a defendant's motion for summary judgment, the violation or theory of recovery is not preserved for consideration by this court. *Hibbs v. Berger*, 430 S.W.3d 296, 320-21 (Mo. App. E.D. 2014). In *Hibbs*, the plaintiff asserted a civil conspiracy claim in his petition based on specific unlawful conduct, then attempted in response to the defendant's motion for summary judgment to assert new unlawful conduct (including statutory violations) to support the civil conspiracy claim. *Id.* Our Eastern District concluded that the newly asserted statutory violations were not preserved for consideration on appeal. *Id.*

This outcome is analogous to the outcome reached when unpled affirmative defenses are raised to defend against a motion for summary judgment. In such cases, we have routinely held that "[a] party's attempt to raise an affirmative defense for the first time in a response to a motion for summary judgment, without seeking leave to amend the pleadings, is not sufficient to plead the defense." *Glasgow Enters., Inc. v. Bowers*, 196 S.W.3d 625, 630 (Mo. App. E.D. 2006).

The same is true here. Mathews did not plead violations of the FCRA related to acquiring information from SmartyStreets in his Petition, and he did not seek leave to

16

amend his Petition to do so.  Yet, the deposition references Mathews relied on to support the additional uncontroverted fact about SmartyStreets included in his response to FieldWorks's motion for summary judgment were available to him more than six months before he filed his Petition.  Had Mathews desired to assert FCRA disclosure or authorization violations in his Petition based on the SmartyStreets address verification process, he could easily have done so.

Even if we were permitted to generously treat the additional uncontroverted fact about SmartyStreets included in Mathews's response to FieldWorks's motion for summary judgment as an amendment of his Petition (which we are not), the single additional uncontroverted fact involving SmartyStreets alleged only that FieldWorks pays SmartyStreets to verify applicant addresses before an applicant sees the disclosure language in the electronic version of the employment application.  Mathews's additional uncontroverted facts did not allege that this process was employed in connection with his employment application; that this process resulted in the generation of a "report" of any kind, let alone a report that would qualify as a consumer report under the FCRA[10]; or that this process was in any way relied on by FieldWorks for employment purposes.  The single "fact" about SmartyStreets alleged in Mathews's response to FieldWorks's motion for summary judgment is facially insufficient to assert a disclosure or an authorization

---

[10]The record suggests that the address verification process occur in the background while an applicant is completing the electronic employment application form, resulting in an on-screen prompt to the applicant inquiring whether the applicant is sure he or she has entered the proper address, and that if an unrecognized address is entered, the applicant cannot hit "submit" to submit his or her electronic application form.

17

violation under the FCRA, and is facially insufficient to controvert facts that support the trial court's conclusion that Mathews does not have standing to pursue disclosure or authorization violations of the FCRA relating to background reports secured from Sterling. *Charles v. Oak Park Neighborhood Ass'n*, 685 S.W.3d 519, 528 (Mo. App. W.D. 2023) (recognizing that claimant bears the burden of establishing that he has standing to seek relief).

Point One is denied.

***Point Two: The material uncontroverted facts establish that Mathews did not allege or suffer a concrete injury sufficient to establish standing for the FCRA disclosure and authorization violations asserted in the Petition***

In his second point on appeal, Mathews argues that genuine issues of material fact prevented the trial court from concluding that he lacked standing to assert the FCRA violation set forth in the Petition because FieldWorks violated the FCRA by providing a confusing form and by failing to obtain written authorization to obtain a consumer report.

"[A] relevant, cogent, and logical argument on appeal that a genuine issue exists as to a particular material fact must necessarily track the Rule 74.04 requirements . . . ." *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 834 (Mo. App. S.D. 2016). "[A]ny court--whether it be the circuit court addressing summary judgment in the first instance or an appellate court reviewing an entry of summary judgment--need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses." *Green v. Fotoohighiam*, 606 S.W.3d 113, 121 (Mo. banc 2020).

Here, the argument portion of Mathews's brief includes a single reference to a specific Rule 74.04(c) paragraph and response thereto to support the contention that

18

genuine issues of fact prevented the trial court from concluding that he lacked standing. That single reference is to a Rule 74.04(c) paragraph in Mathews's response to the motion for summary judgment where he alleged, in paragraph 7, that "[Mathews] was not made aware that a third-party would prepare or provide a Consumer Report." In response, FieldWorks acknowledged that this "fact" was uncontroverted, though it noted that the uncontroverted fact was immaterial.

In the argument portion of his brief, Mathews does refer to exhibits attached to summary judgment pleadings (principally excerpts from deposition testimony), and to allegations in his Petition, in an effort to establish that genuine issues of material fact remained in dispute. However, "[a]rguments . . . that are completely disconnected from the numbered paragraph material facts in the summary judgment record, as required by Rule 74.04, are analytically useless in an appellate review that requires this court to properly apply Rule 74.04. In addition, they provide no legal basis for concluding that the trial court did not comply with that rule." *Cox v. Callaway Cnty. Sheriff's Dep't*, 663 S.W.3d 842, 849-50 (Mo. App. W.D. 2023) (quoting *Blue Chalk*, 497 S.W.3d at 835). "[I]n the absence of reference to Rule 74.04(c) paragraphs or responses, we have no way of knowing whether the exhibit references relied on by [Mathews] in [his] appellate brief (most of which refer to deposition transcripts) were, in fact, cited in a Rule 74.04(c) paragraph or response." *Id.* at 850. "To determine whether the exhibit references in [Mathew's] brief are cited in Rule 74.04(c) paragraphs or responses, we would be required to impermissibly 'act as an advocate for a party' by 'sift[ing] through the entire record to identify' whether disputed or undisputed issues prevent the entry of summary

19

judgment as a matter of law." *Id.* (quoting *Green*, 606 S.W.3d at 117). That we will not do.[11]

Thus, the only issue properly preserved for our review is whether the single Rule 74.04(c) paragraph identified in Mathews's brief, which alleged that Mathews was not aware that a third-party would be preparing a consumer report for FieldWorks after a criminal background check, precluded the trial court from concluding as a matter of law that Mathews lacked standing to pursue the FCRA claims in his petition. Mathews's point on appeal does not clarify whether he is arguing that this "material fact" is in dispute as to preclude finding as a matter of law that he lacked standing, or that the "fact" is uncontroverted precluding a determination that he lacked standing as a matter of law. Because, as we have noted, FieldWorks admitted that the single Rule 74.04(c) paragraph identified in Mathews's brief was uncontroverted (albeit immaterial), we need only address whether that uncontroverted fact precluded a determination that Mathews lacked standing as a matter of law. We conclude that it did not.

The FCRA sets forth two conditions for obtaining and using consumer reports for employment purposes. 15 U.S.C.A. section 1681b(b)(2)(A) provides that a consumer report may not be procured for employment purposes unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

---

[11]We therefore disregard the argument included in Mathews's brief addressing his second point on appeal, where Mathews alleges, untethered to Rule 74.04(c) paragraphs or responses, that there is "no proof" that he signed the electronic application form.

(ii) the consumer has authorized in writing . . . the procurement of the report by that person.

Mathews's Petition alleged that FieldWorks's procurement of the Sterling "Consumer Report" violated the aforesaid disclosure and authorization conditions for use of a consumer report for employment purposes because he did not know the background check would be conducted by a third party.

The electronic employment application disclosure stated in relevant part:

I UNDERSTAND THAT INVESTIGATIVE BACKGROUND INQUIRIES ARE TO BE MADE ON MYSELF INCLUDING CONSUMER INVESTIGATIVE CRIMINAL CONVICTIONS. FURTHER, I UNDERSTAND THAT YOU WILL BE REQUESTING INFORMATION FROM VARIOUS FEDERAL, STATE, AND OTHER AGENCIES, WHICH MAINTAIN RECORDS CONCERNING MY PAST ACTIVITIES RELATING TO ANY CRIMINAL EXPERIENCE.

The uncontroverted facts establish that Mathews admitted in a deposition that he interpreted this disclosure to mean that FieldWorks "might check public records" like Case.net and that he assumed FieldWorks would discover that he had been convicted of burglary. These admissions contradict Mathews's contention that he was confused and did not understand the disclosure to authorize investigative background inquiries, including criminal background checks.

Mathews has not cogently or persuasively explained why it matters whether FieldWorks generated a report on its own about Mathews's criminal history, or instead used the services of Sterling to do so. Mathews bore the burden to establish that the information injury and the invasion of privacy injury claimed in his Petition constituted "invasion[s] of a legally protected interest that is concrete and particularized and actual or

21

imminent, not conjectural or hypothetical."  *Courtright*, 604 S.W.3d at 700 (quoting

*Spokeo, Inc.*, 578 U.S. at 339). He has not done so.

In *Spokeo*, the United States Supreme Court held that although "'Congress has the

power to define injuries and articulate chains of causation that will give rise to a case or

controversy where none existed before,'" that "does not mean that a plaintiff

automatically satisfies the injury-in-fact requirement" for a federal case in controversy

merely by establishing a violation of the FCRA.  578 U.S. at 341 (quoting *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 581 (1992) (Kennedy, J., concurring)).  Rather, a "bare

procedural violation" of the FCRA is not enough to constitute an injury in fact.  *Id.*  The

Court explained, by way of example, that "even if a consumer reporting agency fails to

provide the required notice to a user of the agency's consumer information, that

information regardless may be entirely accurate" and the technical violation of the FCRA

without more, would not "cause harm or present any material risk of harm."  *Id.* at 342.

Here, FieldWorks's disclosure did not specify who would conduct the background

checks referred to.  The failure to disclose whether FieldWorks would conduct the

investigations on its own, or would have a third-party do so, qualifies as omitted

information, but it does not naturally follow that the omitted information rendered the

disclosure confusing.  We find that FieldWorks's failure to expressly  disclose that a

third-party would undertake the criminal background check plainly referred to in the

disclosure is *at best* a technical violation of the FCRA.[12]

---

[12]Mathews has not cited to a single authority for the proposition that a disclosure which plainly advises an applicant that background checks will be conducted and used

Mathews alleges an informational injury in his Petition, but admits the background report Sterling generated about him was accurate. Thus, even though Mathews did not know Sterling would prepare the background report, Mathews has not alleged, nor can he demonstrate, that he was harmed by the Sterling Consumer Report, as he admits its accuracy. *Campbell*, 561 S.W.3d at 123 (holding that no information injury is established where applicant did not receive background report before his termination where no alleged errors in the report were identified and where applicant did not explain how "alleged errors caused him harm or presented a material risk of causing harm").

Mathews also alleges an invasion of privacy injury in his Petition based on generalized assertions that he "did not understand that [FieldWorks] was going to procure a Consumer Report and no reasonable person would have understood from any documentation provided by [FieldWorks] that a Consumer Report would be procured"; that he "was confused by [FieldWorks] documentation"; that "[a] reasonable person would have been confused by [FieldWorks's] documentation"; and that "[t]he documents used by [FieldWorks] to allegedly disclose that a Consumer Report would be obtained for employment purposes were incomprehensible to that purpose to [Mathews] and would

---

for employment purposes nonetheless violates the disclosure and authorization requirements of the FCRA if the prospective employer's intent to use a third party to conduct the background checks is not expressly disclosed. Here, though Mathews vaguely argues that the disclosure was confusing, in part because it omitted reference to use of a third-party to conduct a criminal background check, his conclusory assertion is self-serving, and is not self-proving, as Mathews has not argued that disclosure of use of a third-party would have caused him not to submit his electronic application, and Mathews has not argued that the use of a third-party to conduct his criminal background check resulted in the discovery of information about him that was inaccurate, and/or that he did not expect to be found.

23

have been incomprehensible to a reasonable person as well." [Petition, paragraphs 44, 45, 46 & 47]. However, the uncontroverted facts in the summary judgment pleadings establish that Mathews knew from the disclosure that a background check, and specifically a criminal background check, would be conducted as a condition of his employment with FieldWorks.[13] And, though it is uncontroverted that the disclosure did not identify who would be conducting the background check, Mathews has never explained how that omission renders the disclosure confusing, misleading, or incomprehensible to a reasonable person. Whether conducted by FieldWorks on its own behalf or by a third-party, the fact that background checks, and specifically a criminal background check, would be conducted was plainly disclosed. Mere omission of an express statement to the effect that the background check could be procured by a third-party on FieldWorks's behalf would not cause a reasonable person to be confused that, by signing the authorization, that they were authorizing a criminal background check, regardless by whom it was performed. *See Courtright*, 604 S.W.3d at 705-06 (finding the

---

[13]The instant case is thus distinguishable from *Campbell*, where this court concluded that well pleaded assertions in the petition that a disclosure was confusing and misleading had to be taken as true, and were sufficient to allege a concrete injury in the form of an invasion of privacy, requiring reversal of the grant of a motion to dismiss. 561 S.W.3d at 123-24. We have already explained, *supra*, however, that dismissal of FCRA claims can also be sought by way of a motion for summary judgment, requiring the court to determine whether uncontroverted facts establish a lack of standing as a matter of law. Because the instant case was decided based on a motion for summary judgment, Mathews cannot stand on the bare assertions in his Petition to withstand a challenge to his standing. *Switzer Living Tr., U/A Dated Feb. 5, 2019, By & Through Switzer v. Lake Lotawana Ass'n*, 687 S.W.3d 476, 482 n.6 (Mo. App. W.D. 2024) (holding party cannot rely on allegations in petition to provide the necessary evidentiary support for additional uncontroverted facts set forth in a response to a motion for summary judgment).

plaintiffs did not have standing when they testified that they completed and digitally signed an electronic employment application that gave notice of the background check); *Corozzo*, 531 S.W.3d at 575-76 (holding that plaintiff failed to plead an actual injury required for justiciability and standing where technical FCRA disclosure violation was alleged but plaintiff "did not claim that they did not receive a disclosure or that they did not authorize [the employer] to obtain their consumer reports").

The Court of Appeals for the Eighth Circuit recently considered a similar issue in *Schumacher v. SC Data Center, Inc.*, 33 F.4th 504 (8th Cir. 2022). The Eighth Circuit held that a technical violation of FCRA's disclosure requirements is insufficient to confer standing and that there must be "something more" like "facts indicating the additional information caused confusion as to the consent being given; that the employee would not have provided consent but for the extraneous information; or that the disclosure was so lacking in clarity that the employee was unaware that a consumer report would be procured." *Id.* at 512-13. With respect to an authorization claim, so long as the authorization obtained fits within the broad statutory definition of "consumer report" set forth in 15 U.S.C. section 1681a, the failure of the authorization to comply strictly with FCRA does not give rise to standing; instead, there must be "further factual development" to demonstrate concrete harm suffered. *Id.* at 514.

The uncontroverted facts establish only that Mathews did not know that the "investigative background inquiries" would be performed by a third party. Mathews does not point to any evidence in the record establishing that, had Mathews known that a third party would be completing the "investigative background inquiries," he would not have

25

completed, signed, and submitted the electronic employment application; that the disclosure was so lacking that he had no idea what he was authorizing FieldWorks to do; or that he suffered some sort of harm from Sterling conducting the investigative background inquiries rather than FieldWorks itself. As such, the uncontroverted facts establish that Mathews has not alleged or suffered a concrete injury sufficient to support standing to pursue the FCRA disclosure and authorization claims set forth in the Petition.[14]

Point Two is denied.

---

[14]At the end of the discussion of Point Two in Mathews's brief, he argues that even if the disclosure in the electronic employment application operates as a valid disclosure and authorization under the FCRA, FieldWorks exceeded the scope of the disclosure and authorization by including a trace of Mathews's social security number and a search of sex offender registries. Neither of these "claims" is supported by Rule 74.04(c) numbered paragraphs from the summary judgment record, and for that reason alone, the arguments will not be addressed. Even if the bare assertions were supported by Rule 74.04(c) numbered paragraphs from the summary judgment record, we would disregard the arguments as they represent claims that were not raised in the Petition. *See supra* discussion and resolution of Mathews's first point on appeal.

## Conclusion

The trial court correctly determined that Mathews lacks standing to bring claims against FieldWorks for the disclosure and authorization violations of the FCRA set forth in the Petition, but technically erred by granting summary judgment and entering a merits-based judgment in favor of FieldWorks instead of simply dismissing the Petition. Accordingly, we exercise our discretion pursuant to Rule 84.14 to give such judgment as the court ought to give. The trial court's judgment is modified to state that Mathews's Petition is dismissed. The Judgment as modified is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

27